# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| TRYSTAN SANCHEZ, by and through his parents, GERMAIN SANCHEZ and JENNIFER SANCHEZ, | * * * * * |
| Petitioners, | * |
| v. | * * |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * * * |
| Respondent. | * |

No. 11-685V

Special Master Christian J. Moran

Filed: March 17, 2023

Enlargement of Time;
Growth Rate

* * * * * * * * * * * * * * * * * * * *

Lisa A. Roquemore, Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA, for petitioners;
Jennifer L. Reynaud, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED ORDER DENYING MOTION FOR LEAVE TO FILE OUT OF TIME AND RULING FINDING GROWTH RATE[1]**

Mr. and Ms. Sanchez are entitled to compensation for the harm a vaccination caused their son, Trystan. Compensation includes unreimbursable expenses for various non-medical items.

---

[1] Because this order contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the order will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the decision.

The parties disagree about the growth rate for non-medical items. One party, the petitioners (Mr. and Ms. Sanchez) submitted evidence. The other party, the respondent (the Secretary of Health and Human Services) has not submitted evidence. The Secretary did not submit evidence because the Secretary failed to comply with scheduling orders. As such, the present order explains why the Secretary's most recent motion to enlarge a deadline is DENIED. In the absence of evidence from the Secretary rebutting the evidence the Sanchezes presented, the Sanchezes' evidence is credited. Accordingly, the growth rate for non-medical items is six percent.

Procedural History regarding the Submission of Reports from Economists

The Sanchezes filed their petition in 2011, making this case the second oldest case currently pending in the Office of Special Masters. The Federal Circuit ruled that the Sanchezes are entitled to compensation. After the mandate was issued, the Court of Federal Claims remanded the case to determine damages. Order, issued Aug. 16, 2022.

The first order regarding damages provided preliminary guidance regarding discount rates and growth rates. Here, the undersigned proposed that 4 percent could serve as an appropriate growth rate for non-medical items. But, the parties did not have to accept this proposal. Order, issued Aug. 30, 2022, at 5. Both parties were instructed to submit status reports regarding the growth rate.[2] The deadline for the status report from the Sanchezes was September 9, 2022, and the deadline for the Secretary was September 16, 2022. Id. at 6, 7.

The Sanchezes submitted their status report, early, on September 7, 2022. There, the Sanchezes indicated additional research was required due, in part, to the increase in the cost of services after the Covid pandemic. Pet'rs' Status Rep., filed Sept. 7, 2022, at 3.

The Secretary did not present his view on the date required. As such, the Secretary was reinstructed to comment on the proposed rates. Order, issued Sept.

---

[2] While the August 30, 2022 order proposed discount rates and growth rates, ensuing orders did not always use the term "growth rates." However, a "discount rate" necessarily entails a growth rate as a net discount rate reflects the rate at which an investment would increase and the price increase (or growth rate) of a cost. See Petronelli v. Sec'y of Health & Hum. Servs., No. 12-285V, 2016 WL 3252082, at *4 (Fed. Cl. Spec. Mstr. May 12, 2016); Childers v. Sec'y of Health & Hum. Servs., No. 96-194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999). Any imprecision appears not to have contributed to the Secretary's failure to submit a report from an economist on time.

20, 2022. Without discussing why his submission was late, the Secretary stated that discount rates are set on a "case-by-case basis" and that expert testimony might be required. Resp't's Status Rep., filed Sept. 22, 2022.

The parties' submissions and the current economic situation suggested that resolving the appropriate growth rate might be a difficult question. Order, issued Sept. 27, 2022, at 1. The parties were informed that if they could not agree upon an appropriate discount rate, they would be required to submit expert reports on the topic simultaneously. Id. The "undersigned propose[d] to resolve the discount rate sooner rather than later." Id.

The September 27, 2022 order was discussed in the first status conference regarding damages, held on October 13, 2022. The Secretary did not oppose the simultaneous submission of expert reports. To allow time for negotiations and to ascertain more information about the parties' positions, the undersigned directed the Sanchezes to file a status report by November 30, 2022. Order, issued Oct. 13, 2022.

The Sanchezes disclosed that they were proposing a growth rate of 6 percent for non-medical items. Pet'rs' Status Rep., filed Nov. 30, 2022, ¶ 3. The same day that the Sanchezes submitted their status report, the undersigned stated: "If the parties do not agree to discount rates, the parties will be obligated to submit reports regarding discount rates simultaneously by Wednesday, February 1, 2023. Because the parties are aware of this deadline, the undersigned does not intend to extend the deadline as a matter of routine." Order, issued Nov. 30, 2022, at 2. This was the first warning. The Secretary was also ordered to submit a status report as to whether the proposal from the Sanchezes was acceptable. Id.

The Secretary advised that the parties were attempting to resolve any differences regarding the growth rates. Resp't's Status Rep., filed Friday, Dec. 16, 2022. On the next business day, the undersigned directed the Secretary to provide specific numbers for various categories of growth rates. Order, issued Dec. 19, 2022. The undersigned added: "if the parties have not reached an agreement regarding discount rates, both parties are required to submit reports from experts on Wednesday, February 1, 2023. The undersigned does not anticipate extending this deadline as a matter of routine." Id. This was the second warning.

As instructed, the Secretary disclosed that he proposed a growth rate of 4 percent for non-medical items. Resp't's Status Rep., filed Dec. 23, 2022. In response, the undersigned stated: "In accord with the previous orders, both parties are required to submit reports from experts regarding growth rates on Wednesday,

3

February 1, 2023. The undersigned does not anticipate extending this deadline as a matter of routine." Order, issued Dec. 29, 2022. This was the third warning.

On Friday, January 20, 2023, the Sanchezes advised that they are consulting an economist regarding the growth rate for non-medical items and services. Pet'rs' Status Rep., filed Jan. 20, 2023. The next business day, the undersigned stated: "Previous orders have established that the deadline for both parties to file expert reports is Wednesday, February 1, 2022. This deadline remains in effect. The undersigned does not intend to extend the deadline absent a showing of good cause.... The failure of either party to submit expert reports regarding [growth] rates by February 1, 2023 is likely to be construed as a waiver of any argument regarding [growth] rates." Order, issued Jan. 23, 2023, at 1. This was the fourth warning.

Despite being alerted four times that the deadline would not be extended, the Secretary requested additional time to file a report from an economist on January 30, 2023. The Secretary submitted this motion two days before the February 1, 2023 deadline, which was announced in the November 30, 2022 Order. The Secretary's motion did not set forth with any persuasive specificity the reason that would justify extending the deadline. Accordingly, adjudication of the motion was deferred until after a status conference. Order, issued Jan. 30, 2023.

In a February 2, 2023 status conference, the Secretary's counsel stated that although the economist whom the Secretary had retained, Patrick Kennedy, had indicated that he would meet the February 1, 2023 deadline, the Secretary's attorney learned upon her return from vacation that he could not. The obstacles that prevented Dr. Kennedy from fulfilling the obligation to submit a report by the February 1, 2023 deadline were not presented in the status conference. In any event, the asserted explanation did "not constitute 'good cause.'" Order, issued Feb. 2, 2023, at 1, citing Vaccine Rule 19(b). Nevertheless, the Secretary was afforded an additional week. "If the report is not filed, barring unusual circumstances, the undersigned will move forward in the absence [of] respondent's report." Id.

Within hours of conclusion of the February 2, 2023 status conference, the Sanchezes submitted a report from an economist, Thomas Young. Dr. Young proposes a growth rate of 6 percent for non-medical items. Exhibit 221.

On the second deadline for the Secretary to file an expert report, the Secretary renewed his motion for additional time for Dr. Kennedy to submit a report regarding growth rates. Resp't's Memo., filed Feb. 10, 2023. The Secretary

4

provided no information as to why Dr. Kennedy could not present a report by February 10, 2023. Instead, respondent's counsel asserts "Despite best efforts, Respondent's economist's report is not yet complete." Id. at 2. However, the nature of these efforts was not explained at all. Accordingly, the Secretary's renewed motion was denied. Order, issued Feb. 13, 2023.

In conjunction with the renewed motion, the Secretary also presented a memorandum, consisting of attorney arguments against Dr. Young's proposal of a 6 percent growth rate for non-medical items. The Sanchezes were permitted an opportunity to respond to these criticisms. Id.

The Sanchezes responded to the Secretary's February 10, 2023 memorandum by defending the opinion of Dr. Young. Pet'rs' Resp., filed Feb. 27, 2023.

On Friday, March 3, 2023, the Secretary filed a third motion regarding the deadline for the submission of an economist's report. Recognizing that the previous two motions had been denied, the Secretary sought leave to file Dr. Kennedy's response as exhibit R.

The Sanchezes opposed this motion in a response filed the next business day, Monday, March 6, 2023. The Secretary did not submit a reply within the time permitted by the Vaccine Rules. Accordingly, the issues are ready for adjudication.

Two issues require resolution. First, has the Secretary established good cause to extend the deadline for a report from an economist? Second, how does the evidence regarding growth rate preponderate?

## **Additional Time Has Not Been Justified**

Although the Secretary does not cite any caselaw regarding the enforcement of compliance with scheduling orders, the Federal Circuit and the Court of Federal Claims have provided guidance. When a party fails to comply with a scheduling order due to a lack of diligence, the question of prejudice to the other party has much less significance. O2 Micro Internat'l Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1368 (Fed. Cir. 2006) (holding a district court did not abuse its discretion in finding a lack of diligence did not support allowing a late amendment to a party's infringement contentions). Adherence to and enforcement of scheduling orders deter future dilatory behavior. Trilogy Communications, Inc. v. Times Fiber Communications, Inc., 109 F.3d 739, 745 (Fed. Cir. 1997) (holding a district court did not abuse its discretion in striking an expert's report filed after

5

its due date); Pac. Gas & Elec. Co. v. United States, 82 Fed. Cl. 474, 479 (2008) (awarding attorneys' fees for a violation of a protective order). Late compliance does not necessarily cure a lack of diligence. Sterling-Kates Properties Joint Venture v. United States, 5 Cl. Ct. 398, 400 (1983).

Here, the Secretary has not established diligence that justifies the late submission of a report from an economist. Preliminarily, almost all the potential explanations for why the Secretary did not submit a report until March 3, 2023 are contained within his March 3, 2023 motion. The Secretary's previous two motions filed on January 30, 2023 and February 10, 2023 were noticeably sparse.

In any event, the Secretary appears to offer potentially two explanations for his late submission of a report from an economist. The first might be a potential confusion regarding imprecision in various submissions regarding discount rates and growth rates. Resp't's Mot. for Leave, filed Mar. 3, 2023, at 1-2. Certainly, the undersigned's orders could have been clearer. However, the Secretary has not developed an argument that the Secretary was confused about the issues an economist was required to address by February 1, 2023. In the undersigned's experience, when the parties disagree over discount rates and growth rates, each party retains a single economist to opine about discount rates and growth rates. The undersigned has never encountered a situation in which a party retained one economist to address discount rates and a second economist to address growth rates. To the extent that the Secretary has attempted to justify a failure to comply with the scheduling orders on the lack of clarity in those orders, that argument is unpersuasive. See Resp't's Mot. for Leave at 2 n.1 ("In retrospect, to avoid confusion as to the scope of the expert reports, respondent should have requested clarification from the Court.")

The Secretary grounds the failure to comply with the scheduling orders on Dr. Kennedy's busyness. Resp't's Mot. for Leave at 5-6. But, the story the Secretary tells lacks some details and is not persuasive. The account should begin with the Secretary's September 22, 2022 status report. At that early date, the Secretary recognized that expert testimony could be required. In the October 13, 2022 status conference, the parties were afforded some time to reach an agreement regarding discount rates and growth rates. Yet, the parties knew that if they did not agree, they would be required to submit expert reports simultaneously as set forth in the September 27, 2022 order. The Secretary's March 3, 2023 motion omits this chronology. As such, the date on which the Secretary took any steps to obtain an economist's report is unknown.

The Secretary did not state when he had retained Dr. Kennedy. But, at some unspecified date, the Secretary "deferred having Dr. Kennedy begin working on the case." Resp't's Mot. for Leave at 5. When to direct Dr. Kennedy to begin work was the Secretary's choice. Apparently, the Secretary waited too long. The Secretary represents that Dr. Kennedy has many responsibilities:

> He is a managing partner of Torrey Partners and oversees approximately 20 employees. In addition to retentions within the Program, Dr. Kennedy is retained in civil litigation matters ranging from intellectual property disputes to personal injury and wrongful death claims. At any given time, Dr. Kennedy is the retained damages expert on 50+ cases. Between December 23, 2022, through March 2, 2023, Dr. Kennedy has testified at deposition approximately seven times, testified in trial approximately five days, and executed approximately ten damages reports.

Id. at 6.

These circumstances seem routine and foreseeable. Indeed, the busyness of some professionals is one reason the undersigned advised the parties as early as November 30, 2022 that routine motions for enlargement should not be anticipated. The Secretary has not explained how he planned to meet the deadline with Dr. Kennedy. If the Secretary knew in early December that other professional responsibilities would interfere with the Secretary's requirement to file a report by February 1, 2023, then the opportunity to address those matters was in early December, shortly after the November 30, 2022 scheduling order.

The Sanchezes draw a contrast in how the parties approached the deadlines. "As anyone who works routine in this Vaccine Program knows, delays are epidemic. Respondent *rarely* meets a deadline and seems to treat them as 'optional.'" Pet'rs' Resp., filed Mar. 6, 2023, at 2. In contrast, the Sanchezes were aware that "this Court made it very clear that the deadline regarding expert reports was not going to be extended absent good cause. Hence, Petitioner[s] continue to assure [their] economist expert report was ready by the deadline." Id.

As O2 Micro Internat'l explains, the predominant inquiry regarding a lack of compliance with scheduling orders is "diligence." 467 F.3d at 1368. The Secretary has not shown sufficient diligence. The Secretary has not stated: (1) when he retained Dr. Kennedy, (2) when he informed Dr. Kennedy about the

7

February 1, 2023 deadline, (3) any efforts to confirm that Dr. Kennedy was on schedule to meet the February 1, 2023 deadline, and (4) whether any previously unforeseen events prevented Dr. Kennedy from meeting the deadline. The Secretary has not presented a contract documenting when he retained Dr. Kennedy. The Secretary has not shown any emails reminding Dr. Kennedy of the deadline and confirming his anticipated compliance with the deadline. In light of the lack of diligence, any prejudice to the Sanchezes is much less important.

An enforcement of scheduling orders deters future dilatory behavior. Trilogy Communications, 109 F.3d at 745. This factor plays a role in denying the Secretary's motion for additional time. If the Secretary were to cure a lack of compliance with scheduling orders by filing materials at the Secretary's convenience, then who is setting the schedule? While special masters typically do not catalog every instance in which a party fails to act within a deadline, the Secretary and the experts whom he retains often seek additional time. As long as this slowness in litigation is tolerated, the Secretary is likely to continue his practice as usual. But, as the undersigned has attempted to communicate throughout the case upon remand from the Federal Circuit, the Sanchez case merits diligent attention because (a) the Sanchezes are entitled to compensation and (b) the case is more than a decade old. Thus, the Secretary was aware that enlargements of time based upon routine reasons were unlikely to be accepted.

For these reasons, the Secretary's March 3, 2023 motion for leave to file an expert's report is DENIED. The Clerk's Office is instructed to strike Exhibit R.

## Reasonable Growth Rate

While life care planners can estimate the cost for current services, Trystan will receive some services for many years into the future. Thus, awards for future costs are expanded to reflect anticipated increases in costs. See Delozier v. Sec'y of Health & Hum. Servs., No. 89-49V, 1990 WL 270202, at *7 (Cl. Ct. Spec. Mstr. Oct. 10, 1990) (finding for two non-medical items an appropriate growth rate was 5.25 per year). The Sanchezes, as petitioners, bear the burden of establishing a reasonable growth rate.

Here, the Sanchezes have presented some evidence in the form of a report from Dr. Young. Dr. Young earned a Ph.D. in finance and economics from the University of Utah in 2009. Exhibit 222 (curriculum vitae). For approximately twenty years, he has worked as a "chief economist," whose duties include "macroeconomic analysis and forecasting." Id. The Secretary has not challenged

8

Dr. Young's qualifications to opine on growth rates. See Resp't's Memo., filed Feb. 10, 2023.

Dr. Young concludes that "a more applicable inflation measure for the non-medical services likely to be experienced by Trystan would be in the 6% range, up from the current 4% estimate." Exhibit 221 at 10-11. Although the report contains more details, the crux of Dr. Young's opinion is that previous estimates that non-medical services would increase by four percent per year were appropriate when inflation was expected to be about two percent per year. But, now that "broader inflation expectations [are] 50% higher today, the 4% estimate should also be adjusted forward by at least 50% to 6%." Id. at 5. To ground his opinion as to why inflation is likely to be higher, Dr. Young identifies factors such as de-globalization, non-tradeable goods / services, and demographic transformation. Id. at 5-8.

Through counsel, the Secretary has presented two types of objections. The first type is that awarding a six percent growth rate for non-medical items would be "without precedent." Resp't's Memo., filed Feb. 10, 2023, at 4. Whether this statement is accurate seems immaterial. As the Secretary stated very early in the damages process, a discount rate is assessed on a "case-by-case basis" based upon expert testimony. Resp't's Status Rep., filed Sep. 22, 2022. While the Secretary cited numerous cases in which special masters have accepted growth rates of four percent, the Secretary has not identified any *reasoned* opinions on this topic within the last three years that account for recent changes. See Pet'rs' Resp., filed Feb. 27, 2023 at 2. Thus, the evidentiary value of those previous adjudications is minimal when the Sanchezes have presented different evidence.

The second type of objection that the Secretary has raised through counsel is more evidentiary in that they attempt to challenge some of the foundations for Dr. Young's opinion. See Resp't's Memo., filed Feb. 10, 2023, at 9-12. The Sanchezes' attorney, in turn, attempts to parry them. See Pet'rs' Resp., filed Feb. 27, 2023, at 2-5.

At the end of the day, the record contains some evidence supporting a growth rate of six percent and no evidence in favor of a different growth rate. Dr. Young has provided a reasonable explanation of why interest rates can be expected to remain higher than previously and his opinion, overall, is persuasive. Thus, the evidence preponderates in favor of finding that an appropriate growth rate is six percent.

This finding is based upon the evidence in the record. If the Secretary had wanted to present evidence regarding growth rates, the Secretary had a full and fair opportunity to present that evidence. <u>See</u> Vaccine Rule 3(b)(2). The Secretary knew no later than November 30, 2022 that the Sanchezes were proposing a different growth rate. To the extent that the evidence has come from only one party, the Secretary is responsible for that lapse.

## Conclusion

Both parties were informed of the deadline for submitting reports from an economist and were informed that the deadline would not be extended as a matter of routine. Both parties were reminded of the deadline multiple times.

One party presented evidence; the other did not. The submitted evidence is credited.

1. Respondent's March 3, 2023 motion for leave to file a report out of time is DENIED.

2. The Clerk's Office is directed to STRIKE the document labeled as Exhibit R.

3. The growth rate for non-medical items is six percent.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master
