# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * *
TRYSTAN SANCHEZ, by and
through his parents, GERMAIN
SANCHEZ and JENNIFER
SANCHEZ,

          Petitioners,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

          Respondent.
* * * * * * * * * * * * * * * * * * *

No. 11-685V

Special Master Christian J. Moran

Filed: October 28, 2024

**PUBLISHED ORDER DENYING MOTION FOR PROTECTIVE ORDER
AND COMPELING PRODUCTION OF MENTAL HEALTH RECORDS**[1]

    Germain and Jennifer Sanchez are the parents to a child, Trystan, who suffers from Leigh's disease. The Secretary has argued that years ago, Mr. and Ms. Sanchez failed to produce medical records that affect whether they are entitled to compensation on their claim that a vaccine harmed Trystan. In attempting to determine why documents were not produced much earlier, the Secretary has requested the testimony of Ms. Sanchez, and this testimony has been ordered.

---

[1] Because this Order contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). This means the Order will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. Any changes will appear in the document posted on the website.

Ms. Sanchez is seeking to be excused from having to explain why she did not produce all of Trystan's medical records on the ground that testifying may aggravate her post-traumatic stress disorder ("PTSD").  Ms. Sanchez supported her request to be excused from testifying with a letter from a licensed clinical social worker, Mikal Britt.  Ms. Sanchez was ordered to produce the records from Mr. Britt.  Ms. Sanchez is presently requesting a protective order from this obligation.  The Secretary contends that Ms. Sanchez has placed her mental health in issue when she argued that she could not testify because of post-traumatic stress disorder.

Ms. Sanchez did not submit a reply within the time permitted by the Vaccine Rules.  Moreover, it is difficult to see how Ms. Sanchez could conceivably counter the Secretary's argument that Ms. Sanchez has made her mental health an issue in this case.  Accordingly, the motion for a protective order for relief from the obligation to produce Ms. Sanchez's mental health records is DENIED.  The Sanchezes are ORDERED to produce all materials regarding Ms. Sanchez in the possession, custody, or control of Mr. Britt.

## I.    Factual Events in the Life of Trystan Sanchez[2]

Mr. and Ms. Sanchez are the parents of Trystan Sanchez, who was born in 2008.  At age six months, on February 5, 2009, Trystan received a dose of the diphtheria-tetanus-acellular pertussis vaccine.  Mr. and Ms. Sanchez alleged---and the Federal Circuit found---that the DTaP vaccination caused an aggravation of Trystan's previously unmanifested Leigh's syndrome.  "Leigh's syndrome is a severe neurological disorder that often presents in the first year of life, is characterized by progressive loss of mental and movement abilities, and typically results in death within 'a couple years.'"  Sanchez v. Sec'y of Health & Hum. Servs., 34 F.4th 1350, 1352 (Fed. Cir. 2022) (citing record).

Throughout this litigation, the parties have disputed when Trystan first began to manifest unusual movements.  Via written affidavits and oral testimony,

---

[2] The pending motion for a protective regarding the production of Ms. Sanchez's mental health records does not rely upon any particular event in Trystan's life.  Thus, Trystan's medical history is summarized to provide a context for the Secretary's motion to reopen, which underlies the motion for protective order.  For a more thorough description of Trystan's medical history, see Decision on Remand, 2020 WL 5641872 (Aug. 26, 2020), mot. for rev. denied, 142 Fed. Cl. 247 (2019), rev'd, 34 F.4th 1350 (Fed. Cir. 2022).

2

Mr. Sanchez, Ms. Sanchez, and other family members averred that Trystan started having seizures by February 16, 2009, a date that is Ms. Sanchez's birthday. Mr. and Ms. Sanchez maintain that Trystan continued to have seizures until he was seen by a physician's assistant, Micaela Marin-Tucker, who worked in the office of a pediatrician Rainilda Valencia. During this appointment, which occurred on August 17, 2009, Ms. Marin-Tucker documented that Ms. Sanchez stated that Trystan began to lose skills "2-3 months ago." Exhibit 1 at 54.

Trystan's Leigh's syndrome has interfered with his development. He cannot care for himself. Instead, he depends upon other people, primarily his mother and father, Mr. and Ms. Sanchez.

## II.  **Procedural History**

The complete history of this case is lengthy. It was summarized in the August 14, 2024 order denying a (first) motion for protective order. In short, during the process of determining the compensation to which Mr. and Ms. Sanchez are entitled, the Secretary discovered that Mr. and Ms. Sanchez had not produced records that Trystan's doctors and medical professionals had created much earlier. The Secretary is seeking a reopening of entitlement. Resp't's Mot. to Reopen, filed Aug. 16, 2023; Resp't's Comprehensive Br., filed Jan. 11, 2024.

As explained in the August 14, 2024 order, the Secretary requested that Ms. Sanchez answer questions about why documents that she apparently possessed years ago were not produced earlier. Resp't's Status Rep., filed Dec. 8, 2023.[3] Mr. and Ms. Sanchez disputed whether the Secretary had justified seeking testimony from Ms. Sanchez. Pet'rs' (First) Mot. for Protective Order, filed June 21, 2024. This June 21, 2024 motion cited no cases in support, although the August 8, 2024 reply cited 42 USC 300aa-12(d)(3)(B). The Sanchezes' opposition to conducting a hearing was overruled. Ms. Sanchez, therefore, was ordered to testify orally at a hearing to be held near her home in California.

Through their attorneys (Ms. Roquemore and Mr. Gage), Mr. and Ms. Sanchez represented that Ms. Sanchez's testimony during a September 26, 2023 hearing regarding the amount of compensation caused her an episode of PTSD.

---

[3] The Secretary also requested the testimony of the attorney representing Mr. and Ms. Sanchez, Lisa Roquemore. Ms. Roquemore's status as a testifying witness does not affect whether Ms. Sanchez's mental health records should be produced.

3

Ms. Roquemore and Mr. Gage wrote that they cannot "in good conscience, make Mrs. Sanchez available." Pet'r's Status Rep., filed Aug. 28, 2024. Ms. Roquemore and Mr. Gage expected that a therapist would provide a letter in approximately two weeks.

Two days later, an order responded to the request that Ms. Sanchez be relieved of her obligation to testify. Order, issued Aug. 30, 2024. This order proposed a schedule for resolving Ms. Sanchez's claim that post-traumatic stress disorder prevents her from testifying orally. Anticipated steps included the production of mental health records, a statement from Ms. Sanchez's therapist, and a renewed motion from Mr. and Ms. Sanchez. After a recorded status conference was held on September 4, 2024, the obligations were adjusted. Mr. and Ms. Sanchez remained obligated to produce mental health records by September 18, 2024. Order, issued Sep. 4, 2024.

On September 18, 2024, Mr. and Ms. Sanchez submitted a letter from Mr. Britt. Exhibit 332. Mr. and Ms. Sanchez also sought relief from the order to produce Ms. Sanchezes' mental health records. This September 18, 2024 motion is less than two pages and cites one Federal Rule of Evidence and one Supreme Court case. This motion was too insubstantial to be credited. Mr. and Ms. Sanchez were, therefore, afforded another opportunity to demonstrate that the production of mental health records was not appropriate. Order, issued Sep. 23, 2024. Mr. and Ms. Sanchez filed a notice of supplemental authority, adding one case, on September 26, 2024. In this supplemental authority, Mr. and Ms. Sanchez explained that they did not raise Ms. Sanchez's mental health as part of their June 21, 2024 motion for protective order because her mental health is a "private matter" and because they "feared . . . the court . . . ordering . . . the production of mental health records for the last three (3) years." Pet'r's Supp'l Authority, filed Sep. 26, 2024, at 3.

The Secretary contends that the motion for protective order should be denied. The Secretary maintains that Ms. Sanchez has waived a psychotherapy privilege by "choos[ing] to inject her mental health into these proceedings by partially disclosing privileged materials and affirmatively relying upon them as ground for this Court to grant a Protective Order." Resp't's Resp., filed Oct. 10, 2024, at 4.

4

### III. <u>Analysis</u>

As a preliminary matter, special masters appear to have the authority to grant a protective order when the person from whom information is requested interposes a privilege. See Order Denying Mot. for Protective Order, 2024 WL 4564656, at *11. Of course, the simple invocation of a privilege does not always resolve the matter. A judicial officer may be called upon to evaluate a dispute between the parties.

Whether the parties truly have a dispute is difficult to say in the sense that the Secretary's arguments are so overwhelmingly persuasive that the good faith basis of the September 18, 2024 motion is questionable. Although Mr. and Ms. Sanchez fairly cite to <u>Jaffee v. Redmond</u>, 518 U.S. 1, 14-17 (1996), as a case recognizing a psychotherapist-patient privilege, privileges are generally subject to exceptions and to waiver. In <u>Jaffee</u>, the Supreme Court acknowledged that "the patient may of course waive the protection." <u>Id.</u> at 15 n.14. For examples of cases discussing the waiver of privilege in other contexts, see <u>In re Echo Star Communications, Corp.</u>, 448 F.3d 1294, 1299 (Fed. Cir. 2006) (affirming finding that alleged infringer waived attorney-client privilege); <u>Genetech, Inc. v. United States Internat'l Trade Comm'n</u>, 122 F.3d 1409, 1416-17 (Fed. Cir. 1997) (discussing whether inadvertent production of privileged materials in one forum is a waiver of privilege in a different forum).

By raising their mental health, litigants have been found to have waived protections afforded by the psychotherapist-patient privilege. Examples include: <u>Doe v. Oberweis Dairy</u>, 456 F.3d 704, 718 (7th Cir. 2006) (holding plaintiff seeking damages for emotional distress placed psychological state in issue thus waiving psychotherapy privilege); <u>Schoffstall v. Henderson</u>, 223 F.3d 818, 823 (8th Cir. 2000) ("Numerous courts since <u>Jaffee</u> have concluded that, similar to attorney-client privilege that can be waived when the client places the attorney's representation at issue, a plaintiff waives the psychotherapist patient privilege by placing his or her medical condition at issue" and "by placing her medical condition at issue, [plaintiff] waived the psychotherapist privilege."); see also <u>Lahrichi v. Lumera Corp.</u>, 433 Fed. Appx. 519, 521 (9th Cir. 2011) ("when a plaintiff puts his emotional condition at issue during a trial he waives privilege protecting his psychological records"); <u>Fisher v. Southwestern Bell Telephone Co.</u>, 361 Fed. Appx. 974, 978 (10th Cir. 2010) ("a plaintiff waives the psychotherapist-patient privilege by placing his or her medical condition at issue"). The Secretary cited these four cases in his opposition to the motion for protective order. Resp't's

Resp. at 4.  Thus, a reply might have been expected.  However, Mr. and Ms. Sanchez did not file a reply.

Mr. and Ms. Sanchez should have argued their position in their initial motion for a protective order.  In deciding how to litigate, they anticipated that they would be required to produce Ms. Sanchez's mental health records.  Pet'r's Supp'l Authority, filed Sep. 26, 2024, at 3.  The idea that Ms. Sanchez both (a) could maintain that she should be exempted from testifying about her failure to produce documents at the beginning of the litigation because of a mental health issue and also (b) could prevent the production of material reasonable and necessary to assess her mental health seems contradictory.  A strong argument clarifying their position would have been appropriately made in their motion for a protective order, not saved for a potential reply.

Although afforded the time permitted by the Vaccine Rules and given additional opportunities, Mr. and Ms. Sanchez have not answered the basic question---how they can assert a reason for Ms. Sanchez not to testify and prevent an investigation into that reason by blocking the production of documents?  The one case they cite, United States v. McGuire, 307 F.3d 1192 (9th Cir. 2002), is far afield.  In McGuire, an initial trial on criminal charges resulted in a hung jury.  Id. at 1196.  In advance of a retrial, one witness sought to be excused from testifying again due to her pregnancy and the district court judge found that she was unavailable within the meaning of Federal Rule of Evidence 804(b)(1).  The district court therefore admitted her videotaped testimony from the first trial.  On appeal, the Ninth Circuit found that the district court did not abuse its discretion.  Id. at 1205.  In doing so, the Ninth Circuit noted that there was "no reason to doubt the reliability of the evidence regarding her infirmity."  Id.

While McGuire might have some relevance to evaluating the request in the petitioners' August 28, 2024 status report that Ms. Sanchez be excused from testifying, McGuire does not address the production of documents.  This present order compels only the production of documents and any other material held by Mr. Britt relating to Ms. Sanchez.  The present order does not adjudicate whether Ms. Sanchez will be relieved of her obligation to testify.

### IV.   Order

Special masters are authorized to require the "production of any documents as may be reasonable and necessary."  42 U.S.C. § 300aa–12(d)(3)(B)(iii).  Here, any documents relating to Ms. Sanchez's mental health in the possession, custody,

6

or control of Mr. Britt are reasonable and necessary.  Mr. and Ms. Sanchez are ORDERED to file Ms. Sanchez's mental health records labeled with the next exhibit number.

Mr. Britt may not decline to produce documents due to Ms. Sanchez's objection.  Ms. Sanchez's objection has been heard and overruled.  The present order constitutes an order directing Mr. Britt to produce all documents relating to Ms. Sanchez.  See 45 C.F.R. § 164.512(e)(1)(i).  Ms. Sanchez, therefore, may include this order with any communications with Mr. Britt.

In producing Ms. Sanchez's mental health records, Ms. Sanchez should obtain a certification about the completeness of the records.  If Mr. Britt does not supply a certificate of completeness, the Secretary may file a motion to compel the attendance of Mr. Britt at a deposition to testify about the production of documents.

The deadline for the submission of Ms. Sanchez's mental health records is **Tuesday, November 26, 2024**.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master
