# In the United States Court of Federal Claims

| | |
|---|---|
| TRYSTAN SANCHEZ, by and through his parents, GERMAIN SANCHEZ and JENNIFER SANCHEZ, | )<br>)<br>)<br>) |
| Petitioners, | ) No. 11-685V<br>) (Filed Under Seal: December 2,<br>)  2024; Reissued: February 18, |
| v. | )  2025)* |
| SECRETARY OF HEATH AND HUMAN SERVICES, | )<br>)<br>) |
| Respondent. | ) |

Lisa A. Roquemore, Law Office of Lisa A. Roquemore, Rancho Santa Margarita, CA, with whom was Richard Gage, Richard Gage, PC, Cheyenne, WY, for Petitioners.

Jennifer L. Reynaud, Senior Trial Attorney, Torts Branch, Civil Division, U.S. Department of Justice, Washington, DC, with whom were Heather L. Pearlman, Deputy Director, C. Salvatore D'Alessio, Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General, for Respondent.

## OPINION AND ORDER

**KAPLAN, Chief Judge.**

This case is currently before the Court on Petitioners' Motion for Protective Order, ECF No. 520 (Pet'rs' Mot.). For the reasons set forth below, Petitioners' Motion is **DENIED**.

## BACKGROUND

### I.  Prior Proceedings

Germain and Jennifer Sanchez brought this action seeking compensation under the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-1 to -34, as amended ("Vaccine Act" or "Act"), on behalf of their son, Trystan. At the present time, the case is before Special Master Christian Moran on remand from the court of appeals in Sanchez ex rel. Sanchez

---

* Pursuant to Vaccine Rule 18(b) of the Court of Federal Claims, the Court initially filed this opinion and order under seal on December 2, 2024, and the parties were afforded fourteen days to propose redactions. Neither party proposed any redactions. The Court therefore publicly reissues the opinion and order initially filed under seal without any redactions.

v. Sec'y of Health & Hum. Servs., 34 F.4th 1350 (Fed. Cir. 2022) [hereinafter Sanchez II]. In that opinion, the court of appeals reversed Special Master Moran's ruling denying entitlement to compensation and remanded the case back to him for a determination of damages. See 34 F.4th at 1356.

As this Court explained in Sanchez ex rel. Sanchez v. Sec'y of Health & Hum. Servs., No. 11-685V, 2024 WL 1637913 (Fed. Cl. Mar. 22, 2024) [hereinafter Sanchez III] after the court of appeals remanded the case to the Special Master, the government filed a motion seeking to reopen the record on entitlement. Its motion was based on what it characterized as "newly discovered and highly probative evidence that [is] materially relevant to a fact finding that is dispositive on entitlement." See Sanchez III, 2024 WL 1637913, at *1 (alteration in original) (quoting Respondent's Motion to Reopen Entitlement, ECF No. 379).

After the government filed its Motion to Reopen Entitlement, the Special Master issued an order questioning whether—given the government's intent to call Petitioners' counsel as a witness in connection with its motion—she could continue to represent the Sanchezes consistent with rules of professional conduct. See ECF No. 439. Petitioners then sought relief from this Court, requesting that it, rather than the Special Master, decide the government's motion. See ECF No. 444.

The Court concluded that it lacked authority to intervene in the ongoing proceedings before the Special Master on remand and resolve the Secretary's pending Motion to Reopen Entitlement. See Sanchez III, 2024 WL 1637913, at *2–3. It therefore denied Petitioners' motion asking it to rule on the government's motion. Id. at *3.

## II. The Current Motion

Petitioners have now filed their Motion for Protective Order, which is currently before this Court. This time, Petitioners' requests for intervention are related to the Special Master's order requiring Ms. Sanchez to testify in person concerning the government's Motion to Reopen Entitlement. Pet'rs' Mot. at 3, 17; see also Order, ECF No. 500. Petitioners have objected to having Ms. Sanchez testify in light of her ongoing treatment for post-traumatic stress disorder (PTSD), alleging that Ms. Sanchez's therapist was of the view that requiring her to do so "will only continue to trigger her PTSD and as such only serves to continue setting her back" in her treatment. Pet'rs' Status Rep. at 2, ECF No. 503.

In response to Petitioners' objections, the Special Master directed them to perfect their request that Ms. Sanchez be excused from testifying by filing a motion for a protective order. Order Re: Claim of PTSD at 1, ECF No. 504. He advised that Petitioners could support their motion with a statement from Ms. Sanchez's therapist. Id. at 2. He provided a list of the questions the therapist should address in her statement. Questions Proposed to Ms. Sanchez's Therapist, ECF No. 504-1.[1] He also directed that, if Petitioners chose to provide a statement from

---

[1] Pursuant to the parties' agreement, the Special Master subsequently tabled the requirement that Ms. Sanchez's therapist address the questions he posed in the Order Re: Claim of PTSD. See Order, ECF No. 505.

the therapist, they must file, as a separately numbered exhibit, "all material in the therapist's possession or control generated from therapy with Ms. Sanchez from the last three years." Order Re: Claim of PTSD at 2.

On September 18, 2024, Petitioners filed a renewed motion for a protective order, as the Special Master directed, Pet'rs' Renewed Mot. for Protective Order, ECF No. 508, along with a September 4, 2024 letter from Mikal Britt, a licensed clinical social worker, Ex. 332, ECF No. 507-1. Ms. Britt stated that she had been treating Ms. Sanchez for PTSD, depression, and generalized anxiety since February 9, 2023. Ex. 332 at 1. She explained that she had seen Ms. Sanchez on September 29, 2023, two days after a hearing on damages and that "the stress and intensity of being interrogated on the stand re-triggered Mrs. Sanchez's trauma responses," including "a freeze response, disassociation, sweaty palms, rapid heartbeat, tingling sensations in arms, dry mouth, and involuntary shaking." Id.; see also Order, ECF No. 403. Ms. Britt also reported that Ms. Sanchez had been experiencing "racing thoughts, anger, nightmares, low self-esteem, insomnia, and excessive worry/rumination." Ex. 332 at 1. Ms. Britt opined that the hearing had caused "a major set-back in [Ms. Sanchez's] recovery and healing." Id. Ms. Britt concluded that having Ms. Sanchez testify would be, in her medical opinion, "both inappropriate and potentially harmful" and that she was "worried for [Ms. Sanchez's] mental/emotional well-being and [did] not recommend or endorse that she participates in this hearing and undergo this type of stress." Id.

In their renewed motion for a protective order, Petitioners declined to produce the records Ms. Britt has maintained regarding her treatment of Ms. Sanchez. Pet'rs' Renewed Mot. for Protective Order. They argued that the records were covered by the psychotherapist-patient privilege, recognized by the Supreme Court in Jaffee v. Redmond, 518 U.S. 1, 14–17 (1996). Id. at 3. The Special Master construed the objection as a third motion for a protective order, See Order, ECF No. 509, which he denied on October 28, 2024, Order Denying Mot. for Protective Order, ECF No. 516. He concluded that Petitioners had waived any psychotherapist-patient privilege that they might possess by raising Ms. Sanchez's mental health in resisting an obligation to provide live in-person testimony in connection with the government's Motion to Reopen Entitlement. Order Denying Mot. for Protective Order at 5. The Special Master therefore issued an order directing Ms. Britt to produce all documents in her possession concerning Ms. Sanchez's treatment by November 26, 2024. Id. at 6–7.

On November 25, having lost the issue before the Special Master, Petitioners filed their Motion for Protective Order. They ask that the Court strike the Special Master's October 28, 2024 order that compels the production of Ms. Sanchez's mental health records. Pet'rs' Mot. at 10–11, 18; see also Order Denying Mot. for Protective Order. In addition, they request that the Court reassign this case to a different special master. Pet'rs' Mot. at 11–18.

## DISCUSSION

3

The Vaccine Act states that a special master "to whom a petition has been assigned shall issue a decision on such petition with respect to whether compensation is to be provided under the Program and the amount of such compensation." 42 U.S.C. § 300aa-12(d)(3)(A). It further states that "[t]he decision of the special master may be reviewed by the United States Court of Federal Claims in accordance with subsection (e)." Id. Subsection (e), in turn, gives the parties thirty days to file a "motion to have the court review the decision." 42 U.S.C. § 300aa-12(e)(1).

For the reasons set forth in this Court's previous opinion, the Court of Federal Claims' jurisdiction in the Vaccine Act to review the decisions of special masters extends to decisions that resolve whether compensation is to be awarded and, if so, in what amount. See Sanchez III, 2024 WL 1637913, at *2–3. The Special Master's determinations regarding the assertion of evidentiary privileges or similar matters involving the ongoing proceedings before him do not fall into this category. Further, as the Court also held in its previous opinion, it does not have what Petitioners call "supervisory authority" over the special masters that would justify its intervention in such interlocutory determinations. Id.

Petitioners' invocation of the collateral order doctrine as a basis for this Court to review their assertion of the psychotherapist-patient privilege is similarly unavailing. See Pet'rs' Mot. at 6–9. Under that doctrine, the jurisdiction of the courts of appeals to review final decisions by the district courts under 28 U.S.C. § 1291 may include not only judgments that "terminate an action" but also a "small class" of collateral rulings that are appropriately deemed "final" even before "the whole case is adjudicated." Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 545–46 (1949). "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." Swint v. Chambers Cnty. Comm'n, 514 U.S. 35, 42 (1995).

"In applying Cohen's collateral order doctrine," the Supreme Court has "stressed that it must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.'" Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106 (2009) (quoting Digit. Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868 (1994)). This "admonition," the Court has observed, "reflects a healthy respect for the virtues of the final-judgment rule." Id. In particular, "[p]ermitting piecemeal, prejudgment appeals . . . undermines 'efficient judicial administration' and encroaches upon the prerogatives of district court judges, who play a 'special role' in managing ongoing litigation." Id. (quoting Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981)).

Petitioners argue that an order compelling the production of privileged information meets the criteria the Supreme Court has established to invoke the collateral order doctrine. Pet'rs' Mot. at 6–9. They support their argument by reproducing in full several pages of the decision of the D.C. Circuit in In re Sealed Case, 381 F.3d 1205 (D.C. Cir. 2004). Pet'rs' Mot. at 6–8. That case involved a lower court's order compelling a party to produce information that allegedly was protected by the psychotherapist-patient privilege. In re Sealed Case, 381 F.3d at 1207–08. In finding that the collateral order doctrine applied to the lower court's decision, the court of appeals relied on the reasoning of United States v. Philip Morris Inc., 314 F.3d 612 (D.C. Cir. 2004), which held that an order to produce information allegedly protected by the attorney-client privilege was subject to collateral review. In re Sealed Case, 381 F.3d at 1209–10.

4

But the ruling in Philip Morris was in conflict with the decisions of other circuits that held that orders compelling production of information allegedly protected by the attorney-client privilege are not subject to collateral appeals. See Mohawk Indus., 558 U.S. at 105 n. 1. And the conflict between the D.C. Circuit and five other circuits concerning that issue was resolved against the D.C. Circuit's position. See id. at 103. The Supreme Court held that "disclosure orders adverse to the attorney-client privilege [do not] qualify for immediate appeal under the collateral order doctrine," reasoning that "[p]ostjudgment appeals, together with other review mechanisms, suffice to protect the rights of litigants and preserve the vitality of the attorney-client privilege." Id. The same reasoning would apply to disclosure orders adverse to other privileges, such as the psychotherapist-patient privilege.

Finally, Petitioners ask that the Court reassign this case to another special master. Pet'rs' Mot. at 11–18. The Court lacks the authority to do so. Rule 3(d) of the Vaccine Rules of the United States Court of Federal Claims provides that "[w]hen necessary for the efficient administration of justice, the chief special master may reassign the case to another special master." (emphasis added). If Petitioners believe that reassignment of this matter to a different special master is necessary for the effective administration of justice, they may direct such a request to the Chief Special Master.

## **CONCLUSION**

On the basis of the foregoing, Petitioners' Motion for Protective Order, ECF No. 520, is **DENIED**.

Pursuant to Vaccine Rule 18(b), this Opinion will be held for fourteen days to afford each party an opportunity to object to the public disclosure of any financial or medical information furnished by that party. An objecting party must provide the court with a proposed redacted version of the decision and must provide a justification for each proposed redaction by December 16, 2024. In the absence of an objection, the entire decision will be made public.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Chief Judge