# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| GERMAIN SANCHEZ, and    \* | |
| JENNIFER SANCHEZ,    \* | No. 11-685V |
| *parents of T.S.,*    \* | Special Master Christian J. Moran |
|    \* | |
| Petitioners,    \* | Filed: February 13, 2025 |
| v.    \* | |
|    \* | Date Released: September 29, 2025 |
| SECRETARY OF HEALTH    \* | |
| AND HUMAN SERVICES,    \* | |
|    \* | |
| Respondent.    \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

<u>Lisa A. Roquemore</u>, Law Offices of Lisa A. Roquemore, Rancho Santa Margarita, CA, and Richard Gage, Richard Gage, PC, Cheyenne, WY, for petitioners; <u>Jennifer L. Reynaud</u>, United States Dep't of Justice, Washington, DC, for respondent.

## ORDER DENYING MOTION FOR PROTECTIVE ORDER REGARDING MS. SANCHEZ'S ORAL TESTIMONY[1]

The Secretary has requested that one of the petitioners in this matter, Jennifer Sanchez, testify at a forthcoming hearing regarding a pending motion to reopen entitlement. More specifically, the Secretary intends to elicit testimony about a failure to produce all the medical records of Ms. Sanchez's son at the

---

[1] When this order was released originally, the parties were informed that the order would be made available to the public if a motion for redaction was not filed. Although Mr. and Ms. Sanchez sought redaction, the request was denied. The opportunity for filing a motion for review of the denial of the motion for redaction expired. Thus, the order is being reissued. The only modifications are to the content of this footnote, the caption of the case (which has been modified to present the child's initials), and to the child's name (which has been reduced to initials).

beginning of the case.  Ms. Sanchez and the other petitioner, her husband Germain Sanchez, are seeking a protective order to excuse Ms. Sanchez's testimony.  The basis for the proposed protective order is that Mr. and Ms. Sanchez fear that oral testimony could possibly worsen Ms. Sanchez's post-traumatic stress disorder ("PTSD").

For the reasons that follow, the motion for protective order is denied.  Mr. and Ms. Sanchez have not established "good cause" to justify the issuance of the protective order.  Instead, the forthcoming hearing will be conducted in a manner designed to minimize any possibility of harm to Ms. Sanchez.

## I.    **Background**[2]

Mr. and Ms. Sanchez claimed that various childhood vaccinations, given to their son, T.S., on February 5, 2009, harmed him.  Pet., filed Oct. 17, 2011.  A critical issue was when T.S. first displayed any symptoms of a neurologic problem.  The earliest medical record documenting T.S.'s lack of development was created by a physician's assistant, Micaela Marin-Tucker, on August 17, 2009.  Ms. Marin-Tucker memorialized Ms. Sanchez's report that she noticed a change in T.S.'s development about two to three months earlier.  However, Mr. and Ms. Sanchez attempted to show that T.S.'s neurologic problems started within about two weeks of the vaccinations.

After litigation lasting more than a decade, the Federal Circuit found, as a fact, that T.S. started having neurologic problems close in time to the vaccinations.  The Federal Circuit primarily relied upon testimony from Mr. and Ms. Sanchez, given first by affidavit in 2011 and later by oral testimony in 2012 (fact hearing) and 2017 (entitlement hearing).  Based upon this finding, the Federal Circuit found that Mr. and Ms. Sanchez were entitled to compensation.  34 F.4th 1350 (Fed. Cir. 2022).  The Federal Circuit remanded to determine the amount of compensation to which Mr. and Ms. Sanchez are entitled.

While investigating the amount of compensation to which Mr. and Ms. Sanchez are entitled, the Secretary received medical records that Mr. and Ms. Sanchez should have produced years earlier in the litigation.  With subpoenas, the

---

[2] A more detailed factual background about T.S. may be found in the Decision on Remand, 2020 WL 5641872 (Aug. 26, 2020), mot. for rev. denied, 142 Fed. Cl. 247 (2019), rev'd, 34 F.4th 1350 (Fed. Cir. 2022).

Secretary obtained full sets of records from four providers, and identified numerous other documents that should have been produced earlier.  The missing records include, in chronological order:

- Handwritten Subjective, Objective, Assessment and Plan (SOAP) notes taken by PA Luna during a February 17, 2009 urgent care visit reporting T.S.'s cough symptoms but not mentioning arm contortions;

- A March 8, 2010 record from the Inland Counties Regional Center assessment noting T.S. had a seizure episode on August 8, 2009;

- A June 3, 2010 email from Ms. Sanchez to James. F. Gusella, Ph.D., providing a chronology suggesting that T.S.'s arm contortions began after he recovered from an upper-respiratory illness;

- A record from a November 5, 2010 occupational therapy evaluation mentioning arm contortions beginning after T.S.'s illness;

- A record of an August 6, 2011 visit to Dr. Valencia memorializing Ms. Sanchez's request to "change" a PA's notes regarding onset of T.S.'s symptoms;

- A record from Dr. Brown dated August 19, 2011 stating that Ms. Sanchez asked him "to write a clarifying letter" about his appointment with T.S. in May 2009.  Dr. Brown stated that he did not believe T.S. had unusual arm movements in May 2009, as he would have documented such and ordered additional testing.  Dr. Brown stated that he faxed and mailed this record to Ms. Roquemore.

Based upon the discovery of these previously unfiled records, the Secretary filed a motion to reopen the issue of entitlement.  The Secretary argues that the Sanchezes "almost certainly knew" that these records existed before they filed their claim, and that the records are "directly pertinent to [the] key fact issue of when [T.S.]'s arm contortions began."  Resp't's Mot., filed Aug. 16, 2023, at 1.  Mr. and Ms. Sanchez oppose reopening, arguing that the evidence is cumulative; that the mandate rule and law of the case preclude reopening entitlement; and that the Secretary "soundly waived" the ability to raise the issue as he "knew and should

have known that not all records were on file" during the entitlement phase. Pet'rs' Resp., filed Sept. 6, 2023 at 33. The motion to reopen remains pending.

As part of the process of determining whether reopening the entitlement phase is warranted, the Secretary is seeking oral testimony from Ms. Sanchez (who is mentioned in the records as having communicated with the doctors) and her counsel, Ms. Roquemore (who is mentioned as a recipient of Dr. Brown's letter, and who noted that she reviewed a "letter from Dr. Brown" in an August 24, 2011 timesheet entry).[3] Resp't's Status Rep., filed Dec. 8, 2023. A purpose of the hearing is to question the witnesses about why the identified documents were not produced during the entitlement phase of this case.[4] Mr. and Ms. Sanchez disagreed with this planned sequence and argued that the question of reopening entitlement should be resolved prior to scheduling any testimony. To this end, on June 21, 2024, Mr. and Ms. Sanchez filed a motion for a protective order to prevent the testimony ("First Motion").

The First Motion was denied, as the Sanchezes had not detailed why testimony would not be appropriate, and that the Secretary had a good faith basis to explore why the documents at issue were not produced. Ruling, issued Aug. 14, 2024, 2024 WL 4564656, at *12. The Ruling directed Mr. and Ms. Sanchez to file: the "letter from Dr. Brown" that Ms. Roquemore reviewed on August 24, 2011 as the next exhibit; a status report regarding their availability for a two-day hearing in San Diego in which Ms. Sanchez and Ms. Roquemore would testify; a memorandum regarding the attorney-client privilege and attorney work product doctrine to inform the adjudication of any objections to questions posed in the

---

[3] Based on the material presented thus far, the undersigned determined that "there is a non-frivolous argument for calling Ms. Roquemore as a witness." Order, issued Dec. 14, 2023. The Sanchezes were instructed to consider whether Ms. Roquemore should continue to represent them, given her (likely) dual role as both a witness and an advocate and the various ethics rules. They were given the opportunity to provide their informed consent to continue with Ms. Roquemore, or else to retain a different attorney. See id.; see also Order to Show Cause, issued Mar. 26, 2024. The Sanchezes supplied sufficiently informed consent, establishing that despite the risks of being represented by Ms. Roquemore, they wished to proceed with her. Ms. Roquemore has thus remained counsel of record. Order, issued April 10, 2024. However, during this time, Attorney Richard Gage associated with Ms. Roquemore.

[4] Another potential topic could be the meaning of the recently produced documents, providing an opportunity for direct testimony and cross-examination that could have been given during the original fact hearing if the relevant documents had been produced before then.

anticipated hearing; and any updated medical records to facilitate continued resolution of the damages phase of the case.

Mr. and Ms. Sanchez did not file the "letter from Dr. Brown."  They instead filed a "Discovery Response" to advise that "after a reasonable and thorough search," the letter at issue could not be located.  They further stated that Ms. Roquemore's firm at the time was not a fully electronic firm, and noted that 13 years have passed in the meanwhile.  They maintained their objections based on waiver, lack of due diligence, lack of relevance to the motion to reopen, and work-product privilege. Pet'rs' Notice, filed Aug. 21, 2024.

Maintaining their objections to having a hearing at all, Mr. and Ms. Sanchez filed a status report stating that Ms. Sanchez was undergoing treatment for PTSD and that her attorneys Ms. Roquemore and Mr. Gage could not, in good conscience, make her available for testimony.  Pet'rs' Status Rep., filed Aug. 28, 2024.  They noted that this was mentioned in paragraph 15 of Mr. Sanchez's November 29, 2023 declaration. [5]  Exhibit 295.  Mr. and Ms. Sanchez anticipated filing a letter from Ms. Sanchez's therapist within the next two weeks.  They further stated that Mr. Sanchez remained available to testify on behalf of the family, and that interrogatories would be "a better and more reasonable method" to answer questions.

The undersigned issued an order advising that Ms. Sanchez remained obligated to testify.  However, Mr. and Ms. Sanchez had an opportunity to perfect their request that she be excused by filing a second motion for a protective order.  Order, issued Aug. 30, 2024.  Accompanying the order were several pages of questions posed to Ms. Sanchez's therapist.  The order contemplated that a complete motion would include a memorandum of authorities addressing when a person may be relieved of their obligation to testify; a report from Ms. Sanchez's therapist answering the attached questions; production of material generated from

---

[5] The referenced portion states that Ms. Sanchez was undergoing treatment for "PTSD, depression (unspecified), panic attacks, anxiety, and dissociation.  Further, she is often, when under stressful situations, put into an acute stress response, commonly known as 'fight or flight,'" and that  "For all these reasons, [Mr. Sanchez was] filing this declaration as the representative of [their] family unit."  Exhibit 295.  The declaration did not state that Ms. Sanchez was incapable of testifying.

therapy with Ms. Sanchez from the last three years; and a certification of completeness of the records from Ms. Sanchez's therapist.

The August 30, 2024 order also proposed that the Secretary would have the opportunity to file a response regarding the completeness of Ms. Sanchez's mental health records; a motion seeking a separate mental examination of Ms. Sanchez or a status report disclaiming such an interest; and a response to the motion to excuse Ms. Sanchez from testifying.

Finally, the August 30, 2024 order set a status conference to give the parties an opportunity to discuss this "proposed schedule" and to comment on the scope of questions directed to Ms. Sanchez's therapist. During the status conference, the parties agreed to table the questions asked of Mr. Britt, but otherwise agreed to proceed with the proposed schedule. Order, issued Sept. 4, 2024.

On September 18, 2024, Mr. and Ms. Sanchez submitted a letter from Ms. Sanchez's therapist, Mikal Britt. Exhibit 332. Mr. and Ms. Sanchez filed their amended motion, seeking relief from the order to produce Ms. Sanchezes' mental health records ("Second Motion"). The motion was less than two pages and cited one Federal Rule of Evidence and one Supreme Court case. This motion was too insubstantial to be credited. Mr. and Ms. Sanchez were, therefore, afforded another opportunity to demonstrate that the production of mental health records was not appropriate. Order, issued Sep. 23, 2024. Mr. and Ms. Sanchez filed a notice of supplemental authority, adding one case, on September 26, 2024. In this supplemental authority, Mr. and Ms. Sanchez explained that they did not raise Ms. Sanchez's mental health as part of their June 21, 2024 motion for protective order because her mental health is a "private matter" and because they "feared . . . the court . . . ordering . . . the production of mental health records for the last three (3) years." Pet'rs' Supp'l Authority, filed Sep. 26, 2024, at 3. In response, the Secretary argued that the Second Motion should be denied. The Secretary maintained that Ms. Sanchez waived a psychotherapy privilege by "choos[ing] to inject her mental health into these proceedings by partially disclosing privileged materials and affirmatively relying upon them as ground for this Court to grant a Protective Order." Resp't's Resp., filed Oct. 10, 2024, at 4. Mr. and Ms. Sanchez did not submit a reply.

Without resolving the question of whether Ms. Sanchez would be excused from testimony, the Second Motion was denied.[6]  Order, 2024 WL 5038875, issued Oct. 28, 2024.  Despite being afforded multiple opportunities, Mr. and Ms. Sanchez had not answered the basic question of how they could assert a reason why Ms. Sanchez could not testify but also prevent an investigation into that reason by blocking the production of documents.  Mr. and Ms. Sanchez were again ordered to produce Ms. Sanchez's mental health records and a certification of completeness from Mr. Britt, with a deadline of November 26, 2024.  2024 WL 5038875, at *4.

On November 25, 2024, Mr. and Ms. Sanchez filed a motion for a protective order ("Third Motion"), addressed to Chief Judge Kaplan.[7]  The Third Motion sought a protective order striking the October 28, 2024 order requiring the production of Ms. Sanchez's mental health records.  Mr. and Ms. Sanchez also requested that their case be reassigned to a different special master.  On December 2, 2024, before the Secretary had an opportunity to respond, Chief Judge Kaplan denied the motion, reasoning that the Court of Federal Claims possesses jurisdiction in the Vaccine Program over only decisions of special masters.  In contrast, the issue here was "the assertion of evidentiary privileges or similar matters involving the ongoing proceedings."  Additionally, the Court lacked the authority to reassign the case to another special master, as such a request would properly be sent to the Chief Special Master under Rule 3(d) of the Vaccine Rules.

Following the denial of the Third Motion, the Sanchezes were ordered to file Ms. Sanchez's mental health records by December 12, 2024.  Order, issued Dec. 4, 2024.  Mr. and Ms. Sanchez moved for an extension of time to December 19, stating that Ms. Roquemore was unavailable due to a preplanned vacation and that Mr. Gage had never spoken with Ms. Sanchez's mental healthcare provider, Mr. Britt.  Pet'rs' Mot., filed Dec. 11, 2024.  The Secretary opposed, as Ms. Sanchez and Ms. Roquemore had been aware of the planned vacation for months, and that

---

[6] The order specified that "the motion for a protective order for relief from the obligation to produce Ms. Sanchez's mental health records is DENIED."  Order, issued Oct. 28, 2024 at 2.  It was clarified that "The present order does not adjudicate whether Ms. Sanchez will be relieved of her obligation to testify."  Id. at 6.

[7] Chief Judge Kaplan was previously randomly assigned to adjudicate Mr. and Ms. Sanchez's Motion for a Writ of Mandamus, filed March 4, 2024.

they had "not offered any explanation of what efforts were undertaken to obtain the records or comply with the court's deadline."  Resp't's Opp'n, filed Dec. 12, 2024.

A pre-scheduled status conference took place on December 16, 2024.  Ms. Roquemore confirmed that she did not possess the mental health records, and she did not know whether Ms. Sanchez possessed them or had asked Mr. Britt for them.  As there had been apparently little effort to comply with the order and obtain the records, the motion for additional time was denied.  Order, issued Dec. 17, 2024.  It was noted that the Sanchezes had made Ms. Sanchez's mental health status an issue when they requested that she be excused from testifying, and that they were first ordered to file her mental health records over three months prior.  These records might have bolstered the letter from Mr. Britt and further supported the motion to excuse Ms. Sanchez from testifying; however, the time for filing the certified mental health records had now expired, and the question would have to be resolved without this evidence.  The Secretary was directed to respond to Ms. Sanchez's request to be excused from testimony, first made in the August 28, 2024 status report.  Mr. and Ms. Sanchez would then have an opportunity to reply.  The parties' arguments are summarized.[8]

## II.  Parties' Arguments

### A.    Mr. and Ms. Sanchez's Original Request and Supplemental Arguments

Mr. and Ms. Sanchez first raised the issue of Ms. Sanchez's availability to testify in their August 28, 2024 status report.  They stated that she had been in treatment for PTSD "for a substantial period of time," and that her testimony during the September 2023 damages hearing caused her to experience an episode

---

[8] Meanwhile, Mr. and Ms. Sanchez have filed a petition for a writ of mandamus at the Federal Circuit.  However, neither party has sought a stay pending the Federal Circuit's resolution of the petition.  While the petition for a writ of mandamus is pending at the Federal Circuit, both the Sanchezes and the Secretary submitted pleadings to the Office of Special Masters regarding the pending motion for protective order.  Neither party suggested that adjudication of the pending motion for protective order should be delayed until the Federal Circuit acts.  See Order, issued Jan. 16, 2025 (noting that parties had not requested a stay and maintaining the schedule in the Office of Special Masters).  In absence of any requests to stay the matter and in accordance with Chief Judge Kaplan's instruction "to expedite to the greatest extent possible the proceedings on remand," Opinion and Order, 2024 WL 1637913, at *3 (Fed. Cl. Mar. 22, 2024), the motion for protective order is resolved now.

of PTSD, triggered an acute stress response, and set her back in her treatment.  Ms. Sanchez's therapist advised that further testimony would continue to trigger her PTSD and set her back, and he could not recommend that she participate in a fact hearing.  Mr. Sanchez, however, would be available to testify.

The Sanchezes were permitted to support their request with more information from the therapist, medical records, and a memorandum of authorities.  Orders, issued Aug. 30, 2024 and Sept. 4, 2024.  Mr. and Ms. Sanchez argued that further testimony would be deleterious to Ms. Sanchez's health.  Pet'rs' Renewed Mot., filed Sept. 18, 2024.  They referenced Federal Rule of Evidence 804(a)(4) but did not provide any analysis.  Finally, they argued that "any perceived prejudice to Respondent would be minimal because written questions can be propounded to Ms. Sanchez."  Id.  The Sanchezes asserted psychotherapist-patient privilege and refused to produce her mental health records.

Along with this renewed motion, Mr. and Ms. Sanchez filed a letter from Ms. Sanchez's therapist, Mr. Britt.  Exhibit 332.  Mr. Britt wrote that he has been seeing Ms. Sanchez weekly for one-hour sessions since February 2023.  He diagnosed her with PTSD and stated that it was "highly important that she avoid unnecessarily stressful situations" to continue to heal and to recover.  Mr. Britt recounted Ms. Sanchez's symptoms following her September 2023 testimony, and opined that it was "a major set-back in her recovery and healing."  He further opined that it would be "Both inappropriate and potentially harmful" to put her on the stand again, and did "not recommend or endorse that she participates in this hearing and undergo this type of stress."  However, if the questioning were to be deemed "absolutely necessary," he would recommend that she answer questions in writing, "giving her the time and safety to process the information and provide accurate responses."  Exhibit 332.

The renewed motion did not contain a memorandum of authorities addressing when a person may be relieved of her obligation to testify.  Nor was there an explanation of the cited Rule or the standards a court may use to determine whether a "mental illness" renders a person unable to "be present or testify."  The Sanchezes also did not address why Ms. Sanchez's asserted unavailability was not raised when the Secretary first formally requested her testimony in December 2023.  Thus, the Sanchezes were given a third opportunity to put forth their arguments.  Order, issued Sept. 23, 2024.

Mr. and Ms. Sanchez provided supplemental authority on Rule 804(a)(4) on September 26, 2024.  The Sanchezes cited United States v. McGuire, 307 F.3d

9

1192 (9th Cir. 2002), which addressed whether a witness was unavailable to testify because of her pregnancy.  The Court in <u>McGuire</u> relied on a treater's statement that the stress of a trial could exacerbate the pregnancy.  Likewise, Mr. and Ms. Sanchez argued, they provided a statement from Ms. Sanchez's treater to show that the stress of a trial would exacerbate her condition.

As to when the issue was first raised, Mr. and Ms. Sanchez reiterated that they provided a declaration which disclosed her PTSD in November 2023, and so "all parties concerned were aware of the PTSD issue" at that point.  The Sanchezes also noted the other avenues they explored and maintained that discovery was neither reasonable nor necessary given the issues of waiver and due diligence.

## B.    The Secretary's Response

The Secretary filed his response on January 27, 2025.  The Secretary argued that Rule 804(a)(4) does not apply.  First, these rules of evidence do not apply in the Vaccine Program.  Second, Rule 804 provides exceptions to the rule against hearsay, which the Secretary argued is not the issue here; that is, the question is not whether an out-of-court statement may be presented in lieu of live testimony, but whether Ms. Sanchez may be shielded from having to testify.  Thus, the Secretary concluded, Rule 804(a)(4) "does *not* 'anticipate this scenario.'"

Next, the Secretary contended that the Sanchezes have not established that Ms. Sanchez's mental illness was so severe that she would be unable to testify.  Citing case law from across various jurisdictions, the Secretary argued that mental illness itself does not automatically make a witness unavailable; it must make attendance or testimony relatively impossible.  Examples of factors to consider would be the adverse consequence, the severity of the consequence, and the importance of the testimony in the context of the case.

The Secretary provided examples of cases from across multiple jurisdictions evaluating whether a person with a mental health disorder was unavailable to testify:

- <u>State v. Anderson</u>, 402 P.3d 1063 (Idaho 2017): The Idaho Supreme Court held that the trial court erred in finding that the PTSD and substance use disorder of an alleged victim in a domestic battery case was so severe that she was physically, emotionally, or mentally unable to testify.  The victim supported her request to be excused from testifying with an affidavit from her treating therapist and testimony

10

from her clinical manager at the chemical dependency unit where she was admitted. The therapist "emphatically" recommended that she not testify, and the clinical manager said she would be re-traumatized and that it was too soon in her recovery.  The Idaho Supreme Court found that there was insufficient evidence to establish that she was unable to testify.  The Idaho Supreme Court explained that "the severity of the mental illness may not automatically render a witness unavailable," and that other factors such as symptoms and what tasks the witness is capable of doing must also be considered. The Idaho Supreme Court noted that the victim had successfully testified at the preliminary hearing, albeit with breaks.

- People v. Hansen, 815 N.E.2d 848 (1st Dist. Ill. 2004):  The Appellate Court of Illinois affirmed the finding that a witness's prior testimony was not admissible because the defendant did not establish the witness's unavailability due to physical and mental illness. The witness had submitted unsworn letters from her treating physician and psychiatrist.  The physician stated that she may be able to endure a short period in court, but he "highly doubt[ed]" she could withstand a full day.  The psychiatrist stated that the witness's mental and physical health had deteriorated significantly over the last several years; her testimony would not be accurate due to memory impairment; and the stress of testifying could exacerbate her mental illness.   A letter from the same psychiatrist dated one month prior opined that the witness was relatively stable but that the stress of testifying could exacerbate her illness.  The appellate court found that the circuit court did not abuse discretion in finding that this was insufficient proof of the witness's unavailability.

- Commonwealth v. Housewright, 25 N.E.3d 273 (Mass. 2015): The Supreme Judicial Court of Massachusetts explained that "an unsworn letter from physician may be adequate [proof] but only if it provides sufficient detail about the witness's current medical condition to allow the judge to evaluate the risk that would be posed if the witness were to testify in court—a conclusory assertion is not enough."  In addition, the Supreme Judicial Court identified several factors to consider when evaluating the risk to a witness's health, including the probability that their appearance would cause an adverse health consequence, the

severity of such consequence, and the importance of the witness's testimony in the context of the case.

- <u>Gorcey v. Jersey Shore Medical Center</u>, 2006 WL 533379 (N.J. Super. Ct. App. Div. Mar. 6, 2006): The Superior Court of New Jersey reversed the trial court's determination that the defendant was unable to testify due to mental illness. The evidence included a letter from a treating doctor who said that testifying may destabilize the defendant's condition. The doctor later advised via a phone call that the defendant "had a low threshold for anxiety" and that testifying "could" affect his depression and attendance "may" affect treatment progress. The Superior Court determined that the evidence was insufficient to render the defendant unavailable, as the doctor's letter and opinions were couched in terms of possibilities.

The Secretary compared these cases to the instant situation, noting that Ms. Sanchez previously gave live testimony without breaks or accommodations; that Mr. Britt's unsworn letter reported that Ms. Sanchez had made significant progress, but did not provide information about her current condition to suggest she could not testify; and that Mr. Britt's letter was "couched in terms of possibilities." Resp't's Resp. at 8-10.

Additionally, the Secretary argued that Mr. and Ms. Sanchez have not established that the duration of her illness renders her unavailable. Citing several cases, the Secretary argued that determinations of unavailability include consideration of the expected time of recovery. In <u>McGuire</u>, also cited by Mr. and Ms. Sanchez, in which the Ninth Circuit affirmed the trial court's finding that a pregnant witness was unavailable, the trial involved multiple witnesses, ten defense attorneys, and a judge from another district. The decision to adhere to the trial date and to excuse the pregnant witness, in consideration of so many competing schedules, was not improper. In contrast, the Secretary continued, the Fifth Circuit found that a trial court erred in excusing a pregnant witness when the case could have been continued instead. <u>Peterson v. United States</u>, 344 F.2d 419, 425 (5th Cir. 1965). Here, Mr. Britt did not address the length of Ms. Sanchez's disability, including whether she would ever be able to testify.

The Secretary highlighted several other factors which he argued weigh in favor of finding that Ms. Sanchez is not unavailable. The Secretary emphasized the importance of Ms. Sanchez's testimony at the hearing to reopen entitlement:

Ms. Sanchez possesses unique information concerning
how her son's missing medical records were (or were
not) obtained, maintained, and provided to her attorney
for filing.  She was also the primary person who brought
[T.S.] to his doctor's appointments, including his August
19, 2011 appointment with Dr. Brown.  Her testimony is
vital to respondent's motion to reopen entitlement and, if
granted, whether petitioners can establish entitlement to
compensation.  Yet, petitioners have declined repeated
invitations to submit an affidavit from Ms. Sanchez
presenting her explanation as to why documents were not
properly produced.

Resp't's Resp., filed Jan. 27, 2025, at 13. The Secretary next contended that he
would be prejudiced if Ms. Sanchez did not testify, as no other source for this
information exists, and he has not yet had an opportunity to question her about the
missing records.  Although Rule 804(a)(4) allows for the admission of prior
testimony, such is not available here.  Finally, the Secretary questioned the
reliability of the evidence on Ms. Sanchez's condition, as Mr. Britt did not address
her current symptoms; did not opine on the likely duration; and merely opined that
testimony would "potentially" harm her.

### C.    Mr. and Ms. Sanchez's Reply

Mr. and Ms. Sanchez maintained that Ms. Sanchez should not be required to
testify.  Pet'rs' Reply, filed Feb. 10, 2025.  Implicitly relying upon Vaccine Rule
8(b)(1), the Secretary emphasizes that a special master's duty is "governed by
principles of fairness to both parties."  Mr. and Ms. Sanchez maintain that
requiring Ms. Sanchez is unfair to them because, in their view, information about
how and why records were not produced is not relevant to determining whether
entitlement should be reopened.  Pet'rs' Reply at 1.  Likewise, Mr. and Ms.
Sanchez maintain for similar reasons that Ms. Sanchez's testimony is not
"reasonable and necessary."  Id. at 2, citing 42 U.S.C. § 300aa–12(d)(3)(B)(iii).

With respect to the cases cited by the Secretary, Mr. and Ms. Sanchez
contend that in civil cases, in which the Constitution's Confrontation Clause does
not establish the floor for evidence being offered against a criminal defendant, a
lesser standard of unavailability suffices.  For this proposition, Mr. and Ms.
Sanchez cite Weinstein's Evidence 804-34.  Pet'rs' Reply at 3.  Although the
Secretary had cited cases in which courts found that a mental health issue did not

13

make a witness unavailable, Mr. and Ms. Sanchez did not cite any cases supporting their request, that is, a case finding a witness unavailable due to a mental health problem.

Mr. and Ms. Sanchez further argue that Mr. Britt's letter demonstrates that testifying at the damages hearing was a "major set-back in her recovery and healing." Pet'rs' Reply at 4, quoting Exhibit 332. They recount instances during Ms. Sanchez's last testimony where she did not respond, did not respond quickly, or gave "answers that didn't make sense," and they state that the transcript cannot memorialize everything that may have occurred. Id. at 4-5. They argue that the potential reaction in Ms. Sanchez is worth more consideration than the Secretary's interest in learning information. Id. at 5 ("the scales must tip in favor of Mrs. Sanchez").

Lastly, Mr. and Ms. Sanchez again maintain that the Secretary waived any right to inquire based upon the information disclosed in the first interim fee application in 2014. Pet'rs' Reply at 5-6. This completes the summary of arguments.

## III.   <u>Standards for Adjudication</u>

In the Vaccine Program, special masters govern the production of evidence. 42 U.S.C. § 300aa–12(d)(3)(B). The Federal Circuit has recognized that "the permissible scope of the special master's inquiry is virtually unlimited. Congress desired the special masters to have very wide discretion with respect to the evidence they would consider and the weight to be assigned that evidence." <u>Whitecotton v. Sec'y of Health & Hum. Servs.</u>, 81 F.3d 1099, 1108 (Fed. Cir. 1996).

Although special masters have latitude about the production of evidence, this "very wide discretion" has some bounds. For example, parties in the Vaccine Program may invoke privileges as they would in other courts, such as the Court of Federal Claims. See, <u>e.g.</u> <u>Wittner v. Sec'y of Health & Hum. Servs.</u>, 43 Fed. Cl. 199, 205-06 (1999) (ruling that special master did not err in allowing respondent to call a doctor whom the petitioner's attorney had consulted despite the argument of attorney work product); <u>C.f.</u> <u>Royal Bush Manufacturing, Inc. v. United States</u>, 75 F.4th 1250, 1260 (Fed. Cir. 2023) (stating, in the context of a dispute over antidumping duties, that Customs and Border Patrol has an "inherent authority to issue protective orders"). In opposing Mr. and Ms. Sanchez's motion for

14

protective order, the Secretary has not argued that special masters lack the authority to issue protective orders.

Mr. and Ms. Sanchez's September 18, 2024 motion relied upon Rule 26(c) of the Rules of the Court of Federal Claims ("R.C.F.C."). Pet'rs' Renewed Mot., filed Sep. 19, 2024, at 1. As discussed in the previous paragraph, incorporating R.C.F.C. 26(c) into the Vaccine Program via Vaccine Rule 1 appears both uncontroversial and appropriate.

This provision, in relevant part, states: "A party or any person from whom discovery is sought may move for a protective order. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."[9] A key provision is the "good cause" standard. "Good cause requires a showing that the discovery request is considered likely to oppress an adversary or might otherwise impose an undue burden." Forest Products Northwest, Inc. v. United States, 453 F.3d 1355, 1361 (Fed. Cir. 2006) (affirming denial of a motion for protective order because, in part, the moving party did not provide sufficient detail). "For good cause to exist, the party seeking to limit the disclosure of discovery materials must show that specific prejudice or harm will result if no protective order is granted." In re Violation of Rule 28(D), 635 F.3d 1352, 1357–58 (Fed. Cir. 2011).

## IV.  **Analysis**

At the beginning, it is worthwhile to review the arguments made in the moving papers from Mr. and Ms. Sanchez. As set forth in the procedural history, three items can be considered to underlie the pending request. First, Mr. and Ms. Sanchez first maintained that Ms. Sanchez could not testify due to her PTSD via the August 28, 2024 status report. There, they represented that further information would be forthcoming from Ms. Sanchez's therapist. Next, Mr. and Ms. Sanchez duly filed the letter from Mr. Britt. Exhibit 322. In conjunction with that submission, Mr. and Ms. Sanchez filed a renewed motion on September 18, 2024. Mr. and Ms. Sanchez argued that a "protective order is justified in this case because subjecting Ms. Sanchez to further testimony would be deleterious to her

---

[9] Another portion of R.C.F.C. 26(c)(1), which was deleted from the material quoted in the text as marked by the ellipses, requires a moving party to confer. Mr. and Ms. Sanchez have stated that they conferred with the Secretary via correspondence dated Sept. 17, 2024. Pet'rs' Renewed Mot., filed Sep. 18, 2024, at 2.

health." Pet'rs' Renewed Mot., filed Sep. 18, 2024, at 2.[10]  After being directed to develop their arguments further, Order issued Sept. 23, 2024, Mr. and Ms. Sanchez added a single case, United States v. McGuire, 307 F.3d 1193 (9th Cir. 2002). Pet'rs' Supp'l Auth., filed Sep. 26, 2024.

From this perspective, it is easy to see what the issue is --- have Mr. and Ms. Sanchez established that Ms. Sanchez's health warrants a protective order?  Once the issue is properly defined from the moving papers, much (but not all) of the arguments made in the February 10, 2024 reply become immaterial.  Arguments not presented in an opening brief are waived.  SmithKline Beecham Corp. v. Apotex Corp., 439 F.3d 1312, 1320 (Fed. Cir. 2006); Braseth Trucking, LLC v. United States, 126 Fed. Cl. 608, 615 (2016).

Nevertheless, two arguments in the reply are addressed for the sake of completeness, but only briefly.  First, Mr. and Ms. Sanchez argue that Ms. Sanchez's testimony is not reasonable and necessary.  In this regard, they cite to comments made in earlier status conferences.  Pet'rs' Reply at 1 n.1.  However, the Secretary has persuasively argued that the testimony is reasonable and necessary because Ms. Sanchez's testimony relates to the "reason for delay" in Vant Erve v. Sec'y of Health & Hum. Servs., 39 Fed. Cl. 607, 612 (1997), aff'd, 232 F.3d 914 (Fed. Cir. 2000).  In arguing that Ms. Sanchez's testimony about why she failed to produce documents that should have been produced is neither reasonable nor necessary, Mr. and Ms. Sanchez appear to overlook that the August 14, 2024 order rejected this argument.  2024 WL 4564656, at *12.

A second and related point originating in the February 10, 2025 Reply is an argument that the Secretary waived any argument about the lack of production of documents due to the 2014 Interim Fee Application.  The undersigned plans to address this issue fully in a forthcoming opinion resolving the pending motion to reopen.  However, the undersigned's impression, which is subject to change, is that the 2014 Interim Fee Application did not sufficiently alert the Secretary to the possibility that Mr. and Ms. Sanchez had not produced all of T.S.'s medical

---

[10] The September 18, 2024 Renewed Motion also argued that the psychotherapist-patient privilege precluded the production of Ms. Sanchez's mental health records.  This aspect of the renewed motion was denied.  Order Denying Motion for Protective Order and Compelling Production of Mental Health Records, 2024 WL 5038875 (Oct. 28, 2024), mot. for rev. dismissed on jurisdiction grounds, slip op. (Dec. 2, 2024).

records.  In other words, Mr. and Ms. Sanchez's argument regarding waiver is likely to be found unpersuasive.  Although one reason for this tentative finding is that the undersigned was personally involved in the status conferences, additional evidence and argument may affect the outcome of this issue.  See Vaccine Rule 5(a)(3) (authorizing a special master to make tentative findings); see also Winkler v. Sec'y of Health & Hum. Servs., 88 F.4th 958, 964 (Fed. Cir. 2023) (Mayer, J., dissenting) (discussing a special master's Rule 5 order).

The disposition of these two points permits a focus on the issue raised in Mr. and Ms. Sanchez's moving papers---whether her PTSD prevents her from testifying.  Despite the evidence from Mr. Britt, they have not established good cause, as required under Rule 26(c) of the Rules of the Court of Federal Claims, to justify a protective order.

As a preliminary point, Rule 804 of the Federal Rules of Evidence does not fit the situation particularly well.  This rule contains two paragraphs.  Broadly speaking, paragraph (a) defines when a witness is not available.  (More about this topic below.)  Then upon a showing of unavailability, paragraph (b), again broadly speaking, allows various types of testimony or statements to be admitted into evidence.  Although the parties look to Fed. R. Evid. 804(a) as instructive in guiding the assessment of Ms. Sanchez's unavailability, the consequence of a witness's unavailability for oral testimony is that some other form of evidence is presented at the hearing.  Mr. and Ms. Sanchez are proposing something different.  They want Ms. Sanchez from being excused from presenting evidence entirely.[11]

This difference makes the primary case on which Mr. and Ms. Sanchez rely, McGuire, easily distinguishable.  In McGuire, a victim of a robbery testified at a criminal trial, which produced a hung jury.  307 F.3d at 1195-96.  For the retrial, a doctor for the victim stated that her pregnancy prevented her from testifying.  Id. at 1196.  Over the criminal defendants' objection, the trial court found the witness was not available and allowed her earlier testimony, which was videotaped, to be played to the jury.  On appeal, the Ninth Circuit found that the trial court did not

---

[11] Ms. Sanchez has been offered an opportunity to submit an affidavit about the production of T.S.'s medical records.  See Orders, issued Oct. 17, 2023; Nov. 2, 2023; Nov. 20, 2023; and Apr. 29, 2024.  However, Ms. Sanchez has not done so.  Additionally, given Mr. Britt's suggestion that Ms. Sanchez provide information in writing, she might have submitted an affidavit along with Mr. Britt's letter, but did not do so.

commit an abuse of discretion.  Id. at 1205.  The possibility of admitting former testimony against a party who could have cross-examined the unavailable witness pursuant to Fed. R. Evid. 804(b)(1) differentiates McGuire from the present situation in which Ms. Sanchez has not previously testified about the production of documents.

To be sure, Mr. and Ms. Sanchez rely upon the Ninth Circuit's review of the trial court's finding that the victim was not available.  Pet'rs' Supp'l Authority, filed Sep. 26, 2024, at 2.  The Ninth Circuit stated that factors useful in determining whether a witness is unavailable include "the nature of the infirmity, the expected time of recovery, the reliability of the evidence concerning the infirmity, and other special circumstances."  McGuire, 307 F.3d at 1205.  The parties agree that these factors should be considered.  See Pet'rs' Supp'l Authority, filed Sep. 26, 2024, at 2 (quoting this portion of McGuire); Resp't's Resp., filed Jan. 27, 2025, at 6 (also indirectly quoting this portion of McGuire); Pet'rs' Reply, filed Feb. 10, 2025, at 3 (citing Weinstein's Evidence with a similar list of factors).[12]

While Mr. and Ms. Sanchez cited these four factors in their September 26, 2024 Supplemental Authority, they develop very little argument about them.  Mr. and Ms. Sanchez seem to assume that Mr. Britt's statement, by itself, carries the day for them because the Ninth Circuit stated: "There is nothing wrong with a district court's relying on a physician's statement when assessing availability."  Pet'rs' Supp'l Authority, filed Sep. 26, 2024, at 2, quoting McGuire, 307 F.3d at 1205.  The statement from Mr. and Ms. Sanchez is accurate, but incomplete.  Mr. and Ms. Sanchez leave out the next sentence from the Ninth Circuit: "A pregnancy in its seventh month poses special risks for a mother and her unborn child that may be exacerbated by the stress of trial."  McGuire, 307 F.3d at 1205.

As developed in the cases the Secretary cited, courts have not automatically accepted an assertion of PTSD as a basis for determining a witness is not available.  A prominent example is State v. Anderson, 162 Idaho 610, 402 P.3d 1063 (2017), cited in Resp't's Resp., filed Jan. 27, 2025, at 7-8.  A review of the facts in Anderson is instructive.

---

[12] Although Mr. and Ms. Sanchez cite a 1979 version of this treatise, a similar passage can be found in section 804.03[5][b] of the current version.

Erica Messerly complained to a police officer that Keith Anderson assaulted her. Details of the assault included "squeez[ing] her trachea until she was unable to breathe," "punch[ing] her in the face with his right fist," "grab[bing] her by the hair," again "punch[ing] Messerly one time in the face, briefly knocking her unconscious," "grab[bing] a steak knife and [holding] it to her throat," "jab[bing] [a] pipe into Messerly's left side," and again "punching her in the back of the head twice." 402 P.3d at 1065. At a preliminary hearing before a magistrate court, Ms. Messerly testified about these events. Id. at 1066. "At times during her testimony, Messerly stated that [Mr.] Anderson's presence in the courtroom was distressing to her. She needed to take multiple breaks in order to complete her testimony." Id.

Ms. Messerly sought care for post-traumatic stress disorder and substance use disorder. Id.[13] The State sought to admit Ms. Messerly's testimony from the preliminary hearing in lieu of live testimony on the ground that she was not available. A doctor from the facility into which Ms. Messerly checked herself supported this request with an affidavit. As presented by the Idaho Supreme Court, the doctor averred:

> 2. That Erica Messerly is currently, and has been, a patient at KBH since 6/19/2015;

> 3. That I have examined Ms. Messerly and have had multiple opportunities to observe her and interact with her over the past few days;

> ....

> 6. Ms. Messerly presents as tearful and emotionally labile;

> 7. It has been my observation, and that of my staff, that any significant emotional distress typically is followed by Erica decompensating, which in turn, increases her risk for relapse in the context of her addiction to controlled substances;

---

[13] There is no suggestion that Ms. Sanchez suffers from a substance abuse disorder.

19

....

      9. Ms. Messerly's prognosis is poor to begin with and I would anticipate having to testify would result in further deterioration of her current, already fragile condition;

      10. Testifying would put Ms. Messerly at substantial risk for relapse on controlled substances and pose a significant risk to her mental health;

      11. I emphatically recommend that Ms. Messerly not testify at this time or any in the near future.

Id. at 1066 (all ellipses in the Anderson opinion).

The trial court held a hearing on the State's motion in limine to admit Ms. Messerly's testimony from the preliminary hearing.  During this hearing, the clinical manager of the chemical dependency unit testified.  The clinical manager testified that "in her professional judgment it would not be appropriate for Messerly to testify at trial."  Id.  One reason was that the clinical manager believed that testifying "would re-traumatize her at this point in time."  Id.

The trial court found that Ms. Messerly was not available and allowed the State to read Ms. Messerly's testimony from the preliminary hearing at the trial. Id. at 1067.  On appeal, Mr. Anderson challenged the admission of the preliminary hearing testimony based upon Ms. Messerly's unavailability.  Id. at 1068.

The Idaho Supreme Court determined that the trial court abused its discretion.  The affidavit of the doctor and the testimony of the clinical manager were "insufficient to establish that Messerly was physically, emotionally, or mentally precluded from testifying at trial."  Id. at 1070.  The Idaho Supreme Court explained:

      While this Court is sensitive to the adverse emotional effects associated with providing testimony of a traumatic event, the aforementioned testimony does not demonstrate that Messerly was unavailable. In this case, the concern was regarding a possible relapse due to her fragile mental state. As noted by the court in Burns [v. Clusen, 798 F.2d 931 (7th Cir. 1986)], the severity of the

20

> mental illness itself may not automatically render a
> witness unavailable. The judge must consider the
> symptoms, what tasks a witness is then capable of. <u>See</u>
> <u>Burns</u>, 798 F.2d 931, 937 (1986). Indeed, Messerly was
> able to provide testimony, albeit with breaks, at the
> preliminary hearing.

<u>Id.</u> at 1070.

From this passage, it is evident that the "traumatic event" about which Ms. Messerly wanted to avoid testifying was being assaulted in multiple ways. Despite the written testimony from a medical doctor and oral testimony from a clinical manager, a finding that Ms. Messerly's fragile emotional state made her unavailable constituted an abuse of discretion.

Here, the original source of Ms. Sanchez's trauma is much less clear. According to Mr. Britt, he began seeing Ms. Sanchez on February 9, 2023 and diagnosed her with "Post-Traumatic Stress Disorder, Depression, and Generalized Anxiety." Exhibit 332. Thus, the original stressful event cannot have been Ms. Sanchez's testimony during the damages hearing on September 26-27, 2023. The undersigned, who was present during the damages hearing, agrees that under-oath testimony can be stressful for people. However, Mr. Britt does not connect the dots between Ms. Sanchez's original stressor, which must have occurred before February 9, 2023, and the retrauma of testifying. Certainly, the connection in Ms. Sanchez's case appears more attenuated than the situation in <u>Anderson</u>, in which Ms. Messerly was going to testify about traumatic event itself.

Besides the nature of the infirmity, another relevant factor is the anticipated duration of the infirmity. The Secretary emphasized that Mr. Britt's letter contains no information on this topic. Resp't's Resp., filed Jan. 27, 2025, at 10-13. According to the Secretary, "the letter from Mr. Britt fails to address the length of Ms. Sanchez's purported disability in any respect, including whether Mr. Britt believes Ms. Sanchez would ever be well enough to testify." <u>Id.</u> at 12-13. Mr. and Ms. Sanchez did not counter this point with evidence from Mr. Britt. <u>See</u> Pet'rs' Reply.

To be clear, Mr. and Ms. Sanchez should have produced evidence about the anticipated duration of Ms. Sanchez's disability when they first proposed that she be excused from testifying. As noted in the procedural history, Mr. and Ms. Sanchez have supported their various motions for protective order by citing only a

handful of legal authorities. The evidence that the Secretary accurately describes as missing---information about the anticipated duration of Ms. Sanchez's infirmity---was listed in one of the few cases that Mr. and Ms. Sanchez cited, <u>McGuire</u>. So, the lack of evidence is not because the Secretary has surprised Mr. and Ms. Sanchez by proposing some new element. In any event, the evidence does not persuasively show that Ms. Sanchez should be excused from testifying forever. <u>See</u> Exhibit 332 (Mr. Britt: Ms. Sanchez "has made significant progress").

The next factor is the reliability of the evidence concerning the infirmity. Here, the evidence supporting the infirmity is relatively slender: Mr. Britt's letter that is approximately one-page long. As noted above, the letter does not explain the original basis for Mr. Britt's diagnosis of post-traumatic stress disorder. The letter also does not discuss whether Ms. Sanchez can recover. On the other hand, the evidence that Ms. Sanchez suffers from post-traumatic stress disorder is not challenged and, therefore, is accepted. But, as demonstrated in <u>Anderson</u>, a diagnosis of post-traumatic stress disorder does not mandate a finding of unavailability.

The final factor is other special circumstances. The Secretary argues that "the importance of Ms. Sanchez's testimony at the hearing to reopen entitlement cannot be overstated. Ms. Sanchez possesses unique information concerning how her son's missing medical records were (or were not) obtained, maintained, and provided to her attorney for filing." Resp't's Resp., filed Jan. 27, 2025, at 13. The Secretary's characterization of the importance of Ms. Sanchez's testimony is accurate.

Mr. and Ms. Sanchez do not deny that Ms. Sanchez possesses "unique information" about how medical records were collected. At best, Mr. and Ms. Sanchez maintain that Ms. Sanchez's testimony is not relevant because the Secretary should have pursued missing records in 2014. Pet'rs' Reply, filed Feb. 10, 2025, at 5-6. As stated above, the undersigned is inclined to reject this argument, although additional developments may lead to a different outcome.

In this regard, much of the February 10, 2025 Reply rings untrue. In emphasizing the fairness of the proceedings, Mr. and Ms. Sanchez come close to portraying Ms. Sanchez as a victim of unfairness, blaming the Secretary for not detecting their failure to produce all of T.S.'s medical records sooner. <u>See</u> Reply at 1-2. Again, the undersigned tentatively finds that there was not a lack of diligence on the part of the Secretary, although, again, this inclination is subject to revision. It bears emphasis that Ms. Sanchez and Ms. Roquemore did not produce multiple

documents about T.S.'s health that should have been produced without any request from the Secretary.[14]  In the multiple months since the missing records were discovered, neither Ms. Sanchez nor Ms. Roquemore have offered any explanation as to why the production was delayed.  Thus, Ms. Sanchez contributed, to at least some degree, to her present predicament.  The situation would have been much more "fair" if all of T.S.'s medical records were produced at the beginning of the case in 2011 when they should have been produced.

A final aspect to the topic of "special circumstances" concerns the circumstance of Ms. Sanchez's testimony during the damages hearing.  Anderson recognized that Ms. Messerly's mental state did not prevent her from testifying because she had testified at the preliminary hearing.  Anderson, 402 P.3d at 1070.  The Secretary points out that Ms. Sanchez has testified twice.  Resp't's Resp., filed Jan. 27, 2025, at 8.  Mr. and Ms. Sanchez counters that she had problems testifying during the damages hearing and she experienced problems as recounted by Mr. Britt, who saw her two days later.  Pet'rs' Reply, filed Feb. 10, 2025, at 4-5.

A confounding factor is that when Ms. Sanchez testified in September 2023, she had not disclosed that testifying was unusually difficult for her.  Thus, there was no way for either the Secretary or the undersigned to modulate their questions to accommodate Ms. Sanchez's situation.  During the hearing, Ms. Roquemore did not raise the possibility the questioning was over-the-line.  For example, Ms. Roquemore did not interpose any objections to the questions asked of Ms. Sanchez.  Ms. Roquemore did not inform the undersigned that Ms. Sanchez was becoming unusually stressed.  Neither Ms. Sanchez nor Ms. Sanchez's attorney requested a break for Ms. Sanchez's comfort.  With the information communicated by Mr. Britt that testifying could be "potentially harmful," (Exhibit 332), Ms. Sanchez's infirmity can be accommodated during her oral testimony at the upcoming hearing.[15]

---

[14] Technically, Mr. Sanchez as a co-petitioner was also responsible for production of documents.  However, as a practical matter, he appears to have not been involved in either the gathering or the filing of medical records.

[15] Although Mr. Britt recommends allowing Ms. Sanchez to answer questions in writing, this method deprives the Secretary of asking follow-up questions and prevents observations of Ms. Sanchez's demeanor in answering questions spontaneously.  See Order Denying Motion for Protective Order, 2024 WL 4564656, at *12-13 (explaining, in context of denying the First

Furthermore, with the knowledge that testifying could be stressful, Ms. Sanchez herself can take more precautions. It is apparent that despite being treated by Mr. Britt for approximately seven months for post-traumatic stress disorder before she testified at the damages hearing in September 2023, Ms. Sanchez did not seek his assistance about testifying. When asked with whom she spoke to prepare to testify Ms. Sanchez answered: "My lawyer." Tr. 3069. In response to a question as to whether she spoke with anyone else, Ms. Sanchez said "No." Tr. 3070. Instead of trying to testify without the assistance of her mental health counselor as she did for the damages hearing, Ms. Sanchez can seek guidance and support from Mr. Britt.

In short, some of the stresses associated with oral testimony during the September 2023 damages hearing can be mitigated. Ms. Sanchez and Mr. Britt can devise a plan to help Ms. Sanchez. There can be breaks during Ms. Sanchez's testimony. Mr. Gage, at least, can watch his client's mannerism during her oral testimony and propose safeguards. The undersigned will be present, in person, to monitor more closely Ms. Sanchez for signs of distress such as involuntary shaking. These and other precautions will minimize the potential of harm to Ms. Sanchez.

## V.    **Conclusion**

A request that a witness be excused from testifying due to post-traumatic stress disorder is a serious request. Due to its importance, the undersigned twice instructed the attorneys for Mr. and Ms. Sanchez to enhance their arguments. Yet, the amount of legal analysis, measured in terms of number of cases and legal authorities cited, remained disappointingly poor. So, too, the evidence regarding Ms. Sanchez's infirmity comes up short. Although some aspects of Mr. Britt's September 4, 2024 letter are creditable, his opinion does not control the outcome of the motion for a protective order to preclude Ms. Sanchez from testifying.

The request to indefinitely excuse Ms. Sanchez from testifying orally is DENIED. The parties should anticipate a hearing regarding the Secretary's motion to reopen will be held in San Diego, California, which is near where Mr. and Ms. Sanchez reside and where other sessions of the hearing were held. The witnesses

---

Motion for protective order, which had requested no hearing regarding the motion to reopen, that oral testimony is better than answers to written interrogatories).

at this hearing will include Ms. Sanchez and Ms. Roquemore.  Whether other people will testify will be discussed at a future status conference.  The parties should plan that the hearing will last five days, a period that will allow for frequent and lengthy breaks during Ms. Sanchez's testimony.  The undersigned intends to prioritize conducting this hearing as a step to resolving all issues in the case.

In accord with the above disposition, Mr. and Ms. Sanchez are ORDERED to file a status report identifying entire weeks in which Ms. Roquemore, Mr. Gage, Mr. Sanchez, and Ms. Sanchez are available.  Mr. and Ms. Sanchez shall propose weeks beginning May 5, 2025.  The deadline for the status report is **Wednesday, February 26, 2025**.

**IT IS SO ORDERED.**

s/ Christian J. Moran
Christian J. Moran
Special Master