# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| GERMAIN SANCHEZ, and<br>JENNIFER SANCHEZ,<br>*parents of T.S.*,<br><br>　　Petitioners,<br>v.<br><br>SECRETARY OF HEALTH<br>AND HUMAN SERVICES,<br><br>　　Respondent. | No. 11-685V<br>Special Master Christian J. Moran<br><br>Filed: April 14, 2025<br><br>Date Released: September 30, 2025 |

* * * * * * * * * * * * * * * * * * * *

Lisa A. Roquemore, Law Offices of Lisa A. Roquemore, Rancho Santa Margarita, CA, and Richard Gage, Richard Gage, PC, Cheyenne, WY, for petitioners; Jennifer L. Reynaud, United States Dep't of Justice, Washington, DC, for respondent.

## ORDER DENYING MOTION FOR REDACTION[1]

Germain and Jennifer Sanchez, petitioners, are seeking compensation for their son, who received various vaccines and was later diagnosed with Leigh's syndrome. This long-running claim has prompted multiple published orders and opinions.

Recently, an October 28, 2024 Order denied the petitioners' request for a protective order and compelled the production of Ms. Sanchez's mental health records possessed by her therapist, Mikal Britt. 2024 WL 5467401. The Court of

---

[1] When this order was released originally, the parties were informed that the order would be made available to the public if a motion for review was not filed. The opportunity for filing a motion for review of the denial of the motion for redaction expired. Thus, the order is being reissued. The only modifications are to the content of this footnote and the caption of the case, which has been modified to present the child's initials.

Federal Claims denied a challenge to the October 28, 2024 Order through an Opinion and Order, issued December 2, 2024. 2024 WL 5414170.

Most recently, a February 13, 2025 Order compelled the testimony of Ms. Sanchez, despite the argument that her posttraumatic stress disorder prevents her from testifying. Pursuant to 42 U.S.C. § 300aa–12(d)(4) and Vaccine Rule 18(b), Ms. Sanchez seeks redaction of the February 13, 2025 Order. Because the February 13, 2025 Order followed two public opinions discussing issues related to Ms. Sanchez's mental health and her treatment with Mr. Britt, a publication of the February 13, 2025 Order would not constitute a clearly unwarranted invasion of privacy. Thus, the February 26, 2023 motion to redact is DENIED.[2]

## Public Access to Information in the Vaccine Program

The history of public access to information contained in court decisions and the history of the creation of the Vaccine Program[3] provide a context for the pending motion to redact. Both histories suggest that redaction is available in relatively limited circumstances.

In American jurisprudence, the public can generally access court documents. Nixon v. Warner Comm. Inc., 435 U.S. 589, 597 (1978). As part of this country's inherited traditions, Congress may be presumed to know this principle.

In the mid-1980s, Congress investigated vaccines because of concerns about their safety and to stabilize the market for manufacturers. Bruesewitz v. Wyeth, LLC., 562 U.S. 223, 226 (2011). In the 99th Congress, competing proposals were introduced. See Figueroa v. Sec'y of Health & Human Servs., 715 F.3d 1314, 1323 (Fed. Cir. 2013), Vijil v. Sec'y of Health & Human Servs., No. 91-1132V, 1993 WL 177007, at *4-5 (Fed. Cl. Spec. Mstr. May 7, 1993).

One of these proposals, which was introduced on April 2, 1985, was Senate Bill 827. S. 827 would have created a compensation program located in the District Court for the District of Columbia in which special masters would preside. S. 827, 99th Cong., § 2104(b), § 2104(d)(1) (1st Sess. 1985). In addition to a

---

[2] The motion also requests that the name of the Sanchezes' child be redacted. That request will be addressed in a separate order.

[3] For information about the legislation that created the Vaccine Program, this order draws upon a summary provided in Lainie Rutkow et al., Balancing Consumer and Industry Interests in Public Health: The National Vaccine Injury Compensation Program and Its Influence During the Last Two Decades, 111 Penn St. L. Rev. 681 (2007).

2

compensation program, S. 827 contained provisions to improve the safety of vaccines. However, the first session of the 99th Congress adjourned without acting on any of the proposed legislation.

In the second session of the 99th Congress, the House and Senate considered different bills. The version of S. 827 from September 24, 1986 proposed to improve the safety of vaccines. S. 827, 99th Cong. (2d Sess. 1986). It appears that S. 827 did not include a compensation program.

However, the legislation that Congress eventually enacted did contain a compensation program. Congress placed adjudication of vaccine compensation program claims in the district courts. Pub. L. 99-660 § 2112(a). In this legislation, provisions related to discovery and disclosure of information were combined in one section. Id. at § 2112(c), codified at 42 U.S.C. § 300aa–12(c)(2) (1988). Congress's selection of district courts with their tradition of openness to the public suggests that Congress intended for the normal rules about access to judicial decisions to apply. Castagna v. Sec'y of Health & Human Servs., No. 99-411V, 2011 WL 4348135, at *1 (Fed. Cl. Spec. Mstr. Aug. 25, 2011).

In 1987, Congress simultaneously funded the Vaccine Program and amended the Vaccine Act. The 1987 amendments did not vary the disclosure provisions. However, in 1987, amendments changed the venue for filing claims from the district courts to the Claims Court. Pub. L. 100-203 § 4307(1); see also Milik v. Sec'y of Health & Human Servs., 822 F.3d 1367, 1375 (Fed. Cir. 2016); Stotts v. Sec'y of Health & Human Servs., 23 Cl. Ct. 352, 358 n.7 (1991).

The Vaccine Program became effective on October 1, 1988. Pub. L. 100-203 § 4302. As initially conceived, special masters were issuing reports, subject to de novo review by judges of the Claims Court. See 42 U.S.C. § 300aa–12(d) (1988). In this context, reports from special masters and decisions from Claims Court judges started to become available to the public. E.g., Bell v. Sec'y of Health & Human Servs., 18 Cl. Ct. 751 (1989) (reproducing special master's report); Philpott v. Sec'y of Health & Human Servs., No. 88-20V, 1989 WL 250073 (Cl. Ct. Spec. Mstr. Aug. 4, 1989).

Congress found that the parties were too litigious in the early years of the Program. H.R. Rep. No. 101-386, at 512 (1989) (Conf. Rep.), reprinted in 1989 U.S.C.C.A.N. 3018, 3115. Congress amended the Vaccine Program in 1989, giving special masters the authority to issue decisions, which could be subject to a motion for review. Pub. L. 101-239 § 6601(h), codified at 42 U.S.C. § 300aa–12(d) and (e).

3

Congress also added a provision allowing limited redaction of decisions of special masters. Pub. L. 101-239 § 6601(g)(2). The reason Congress added this provision is not clear. See Anderson v. Sec'y of Health & Human Servs., No. 08-396V, 2014 WL 3294656, at *2 n.7 (Fed. Cl. Spec. Mstr. June 4, 2014).

Although Congress authorized redaction of decisions, few litigants requested redaction for many years. Special masters tended to allow redaction without much analysis. After a surge in requests for redaction, the then-Chief Special Master issued an order generally narrowing redaction. Langland v. Sec'y of Health & Human Servs., No. 07-36V, 2011 WL 802695 (Fed. Cl. Spec. Mstr. Feb. 3, 2011). On a motion for review, the Court of Federal Claims endorsed the special master's analysis regarding redaction in a brief footnote. 109 Fed. Cl. 421, 424 n.1 (2013).

The Court of Federal Claims analyzed the special masters' position regarding redaction more extensively in W.C. v. Sec'y of Health & Human Servs., 100 Fed. Cl. 440, 456-61 (2011), aff'd on nonrelevant grounds, 704 F.3d 1352 (Fed. Cir. 2013). W.C. disagreed with the approach taken and asserted that the Freedom of Information Act ("FOIA") was a basis for evaluating redaction requests.

Shortly after W.C., the then-Chief Special Master issued another order regarding redaction. Castagna explored the topic in more depth and, again, found redaction was limited to narrow circumstances. 2011 WL 4348135.

After those orders were issued, the Court of Federal Claims has found special masters were not arbitrary and capricious in either denying or permitting redaction. Spahn v. Sec'y of Health & Human Servs., 133 Fed. Cl. 588, 604 (2017) (stating that the decision to redact is a question of law and holding that redaction of "the names of petitioner . . . and petitioner's treating physicians . . . are not the kind of medical, or confidential, or privileged, financial information that the Vaccine Act requires to be withheld from public view"); Lamare v. Sec'y of Health & Human Servs., 123 Fed. Cl. 497 (2015); R. K. v. Sec'y of Health & Human Servs., 125 Fed. Cl. 276 (2016); see also Tarsell v. United States, 133 Fed. Cl. 805 (2017) (denying petitioner's request to redact the names of all medical providers from the Court's Opinion and Order);[4] but see K.N. v. Sec'y of Health & Hum. Servs., 167 Fed. Cl. 142 (2023).

---

[4] Although the caption to the order in Tarsell identifies the "United States" as the respondent, the "Secretary of Health and Human Services" is the respondent in Vaccine Program cases. 42 U.S.C. § 300aa–12(b)(1).

4

Against this background, Mr. and Ms. Sanchez filed the pending motion to redact.

## Procedural History Leading to the Motion to Redact

A. <u>Background</u>

During the entitlement phase, Mr. and Ms. Sanchez failed to produce records about their son that should have been produced. Based upon this newly discovered evidence, the Secretary seeks to set aside the finding of entitlement. Resp't's Mot., filed Aug. 16, 2023. ECF No. 379. As part of that process, the Secretary requested testimony of Ms. Sanchez.[5]

Mr. and Ms. Sanchez disagree. They argue that entitlement should not be reopened, and Ms. Sanchez should not testify. <u>See</u> Pet'rs' Resp., filed May 9, 2024. ECF No. 483. However, the objection to Ms. Sanchez testifying was found not persuasive. Order, issued August 14, 2024. ECF No. 500. This order allowed for a motion for redaction. After the time for redaction elapsed, the order was made public through a posting on the Court's website on October 24, 2024. ECF No. 515. Subsequently, private commercial services have picked up the order. 2024 WL 4564656; 2024 BL 382147; 2024 U.S. Claims LEXIS 2766.

Mr. and Ms. Sanchez introduced a new justification for Ms. Sanchez not to testify. Via a status report filed August 28, 2024 (ECF No. 503) and a motion filed on September 18, 2024 as supplemented on September 26, 2024 (ECF Nos. 508 and 510), Mr. and Ms. Sanchez asserted that Ms. Sanchez could not testify due to posttraumatic stress disorder. They supported their position with a letter from Mr. Britt. Exhibit 332.

As part of the process for resolving this issue, Mr. and Ms. Sanchez were ordered to produce Ms. Sanchez's mental health records. Order, issued Aug. 30, 2024 and revised in non-relevant part on Sep. 4, 2024. ECF Nos. 504 and 505. On the deadline for the production of Ms. Sanchez's mental health records, Mr. and Ms. Sanchez did not file them. Instead, they sought a protective order. Pet'rs' Mot. for Protective Order, filed Sep. 26, 2024. ECF No. 512. The Secretary opposed. Resp't's Resp., filed Oct. 10, 2024. ECF No. 513.

---

[5] The Secretary also requested testimony from the attorney representing Mr. and Ms. Sanchez, Lisa Roquemore. However, Ms. Roquemore's testimony is not relevant to the outcome of the pending motion to redact.

5

The petitioners' request to be relieved of their obligation to produce Ms. Sanchez's mental health records was denied. Order, issued Oct. 28, 2024. ECF No. 516. The October 28, 2024 Order summarized information essential to resolving the petitioners' September 26, 2024 motion for protective order, including that Ms. Sanchez suffered from PTSD and that Mr. Britt wrote a letter supporting her request to be excused from testifying. The October 28, 2024 Order also identified Mr. Britt as Ms. Sanchez's mental health therapist and evaluated the petitioners' argument that the psychotherapist-patient privilege prevented the disclosure of Ms. Sanchez's mental health records. The October 28, 2024 Order concluded that Mr. and Ms. Sanchez had waived any protections associated with the psychotherapist-patient privilege by introducing Ms. Sanchez's mental health into the litigation. Thus, they were ordered to produce Ms. Sanchez's mental health records. The October 28, 2024 Order alerted the parties that it would be made available to the public and allowed for redaction. After the time for proposing redactions elapsed, the October 28, 2024 Order was made public on December 8, 2024, as a post on the Court's website. ECF No. 525. Like the previous published orders, private services have gathered the October 28, 2024 Order. 2024 WL 5467401; 2024 BL 449451; 2024 U.S. Claims LEXIS 3224.

Mr. and Ms. Sanchez disputed the order denying the motion for protective order by seeking review at the Court of Federal Claims. Pet'rs' Mot. for Protective Order, filed Nov. 25, 2024. ECF No. 520. The judge to which this motion was directed was Chief Judge Kaplan. Quickly, Chief Judge Kaplan denied the motion for protective order. Opinion, issued Dec. 2, 2024. ECF No. 521. The Chief Judge wrote: "Petitioners have objected to having Ms. Sanchez testify in light of her ongoing treatment for post-traumatic stress disorder (PTSD), alleging that Ms. Sanchez's therapist was of the view that requiring her to do so 'will only continue to trigger her PTSD.'" Id., quoting Pet'rs' August 28, 2024 Status Report. The Chief Judge also quoted the letter from Mr. Britt and identified Mr. Britt as a licensed clinical social worker. The Chief Judge ultimately concluded that the Court of Federal Claims lacked jurisdiction to evaluate the October 28, 2024 Order on an interlocutory basis. The Court's December 2, 2024 Opinion ended with a statement that it would become available to the public if the parties did not propose redactions. Chief Judge Kaplan's Order became available to the public on February 18, 2025 through the court's website and private sources. ECF No. 540. 2024 WL 5414170; 2024 BL 488115; 2024 U.S. Claims LEXIS 3683.

Mr. and Ms. Sanchez sought relief from the order to produce Ms. Sanchez's mental health records and from Chief Judge Kaplan's denial of their motion for protective order at the Federal Circuit. More specifically, Mr. and Ms. Sanchez

6

requested a writ of mandamus and/or an interlocutory appeal. As part of their Federal Circuit filing, they submitted an appendix under seal. Other parts of the Federal Circuit docket are available to the public.

The Federal Circuit denied the petition for mandamus. In re T.S., No. 2025-114, 2025 WL 670189 (Fed. Cir. Mar. 3, 2025). In its summary of the proceedings, the Federal Circuit stated that the Sanchezes are seeking to excuse Ms. Sanchez from testifying because her testimony "purportedly will aggravate her mental health condition." Id. at *1. The Federal Circuit generally did not evaluate whether testifying would harm Ms. Sanchez. Rather, the Federal Circuit held that the Sanchezes did not establish the demanding standard for a writ of mandamus. Id. at *2. The Federal Circuit opinion appears on the website for the Federal Circuit and has been gathered by commercial services. 2025 WL 670189; 2025 BL 67204; 2025 U.S. App. LEXIS 4825.

Meanwhile, while the Sanchezes' petition for a writ of mandamus was pending, a February 13, 2025 Order denied the petitioners' motion for protective order regarding Ms. Sanchez's testimony, which was first raised in the August 28, 2024 status report and presented more fulsomely in the September 18, 2024 motion. ECF No. 536. The February 13, 2025 Order reviewed the foundational procedural history and the documents about Mr. and Ms. Sanchez's son that should have been produced earlier. The February 13, 2025 Order explained that the October 28, 2024 Order had ordered Mr. Sanchez and Ms. Sanchez to produce Ms. Sanchez's mental health records possessed by Mr. Britt and that they had failed to produce them. The February 13, 2025 Order recapped the parties' arguments. Essentially, Mr. and Ms. Sanchez argued that because Mr. Britt had diagnosed Ms. Sanchez with posttraumatic stress disorder, she could not testify. In contrast, the Secretary cited various cases that discussed whether a potential witness with posttraumatic stress disorder could testify.

In its analysis, the February 13, 2025 Order found that Mr. and Ms. Sanchez had not established "good cause" to warrant a protective order forbidding Ms. Sanchez's testimony. The February 13, 2025 Order found that Mr. Britt's letter failed to provide information relevant to assessing Ms. Sanchez's claimed unavailability, such as the anticipated duration of any incapacity. The February 13, 2025 Order found that Ms. Sanchez possesses unique information about how the newly produced documents were and were not collected. Finally, the February 13, 2025 Order allowed for ways to mitigate any stress on Ms. Sanchez when she testifies at the upcoming hearing.

This February 13, 2025 Order has not been made available to the public as it is subject to the pending motion for redaction.

B. <u>Pending Motion for Redaction</u>

Within the time permitted by the Vaccine Rule 18, the Sanchezes sought redaction of the February 13, 2025 Order. Pet'rs' Mot. to Redact, filed Feb. 26, 2025. ECF No. 542. A key question was the degree, if any, to which the February 13, 2025 Order revealed new information about Ms. Sanchez. The petitioners were given an opportunity to address this issue. Order, issued Mar. 7, 2025. ECF No. 547. Mr. and Ms. Sanchez supplemented their motion to redact on March 12, 2025. ECF No. 553.

The Secretary filed a response. After reviewing the legal basis for any motion for redaction, including <u>Langland</u> and <u>W.C.</u>, the government raised points against redaction, including arguing that Ms. Sanchez's "privacy concerns are largely conjectural" and that the February 13, 2025 Order included details that "have already been made public in two prior published orders." Resp't's Resp., filed Mar. 24, 2025. ECF No. 559. The Secretary also maintained that redacting Ms. Sanchez's mental health condition would render the February 13, 2025 Order "'unintelligible and entirely uninformative to the public." <u>Id.</u> at 7, quoting <u>Anderson</u>, 2014 WL 3294656, at *3.

Next, the Secretary argued that he (rather than the Sanchezes) provided some of the information that the Sanchezes seek to have redacted. (This information is primarily or exclusively quotations and summaries of other cases.) The Secretary contests redaction of these terms. <u>Id.</u> at 7-8. Finally, the Secretary maintains that "the Court should consider that there is a significant Program interest in not having every case caption reduced to initials. This would make the administration of the Program unmanageable." <u>Id.</u> at 8. In conclusion, the Secretary stated: "Respondent does not believe it is appropriate to advocate in favor of disclosure of petitioner's information. Ultimately respondent defers to the Special Master's judgment as to whether petitioner's Motion should be granted." <u>Id.</u> at 8-9.

Mr. and Ms. Sanchez remained consistent in requesting redaction. Pet'r's Reply, filed Mar. 28, 2025. ECF No. 561. With that submission, the petitioners' motion for redaction is ready for adjudication.

8

## Standards for Adjudication

For all issues, including evaluating a motion for redaction, the special master's duty "is to apply the law." Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1280 (Fed Cir. 2005).  With respect to issues of public access to judicial decisions, the preferences of the parties are not binding. Reidell v. United States, 47 Fed. Cl. 209 (2000) (declining to vacate underlying decision as parties requested in settling the case). The Seventh Circuit (Posner, J.) has emphasized the need for trial courts to make their own assessment of requests to limit the public's access to information and not to defer to the parties:

> [W]e would be remiss if we failed to point out that the privilege of suing or defending under a fictitious name should not be granted automatically even if the opposing party does not object. The use of fictitious names is disfavored, and the judge has an independent duty to determine whether exceptional circumstances justify a departure from the normal method of proceeding in federal courts.

Doe v. Blue Cross & Blue Shield United of Wisconsin, 112 F.3d 869, 872 (7th Cir. 1997). In an order written when presiding over a matter pending in the District Court of Delaware, Federal Circuit Judge Bryson made a similar point. The litigants in complex civil cases use "the sealing privileged excessively, without careful consideration of whether it is appropriate in particular instances. The problem for judges is that such requests are seldom opposed---the would-be opposing party has access to the materials and doesn't particularly care whether the public has access as well." Lipocine, Inc. v. Clarus Therapeutics, Inc., C.A. No. 19-622, 2020 WL 4569473, at *7 (D. Del. Aug. 7, 2020) (denying motion to seal an order resolving a dispute over attorney-client privilege).[6] Similarly, a precedential order from the Federal Circuit declared that "district courts have an independent duty to protect the public's right of access---even when the parties agree to maintain confidentiality of publicly filed information pursuant to a protective order." DePuy Synthes Products, Inc. v. Veterinary Orthopedic Implants, Inc., 990 F.3d 1364, 1370 (Fed. Cir. 2021). Likewise, in the context of

---

[6] Although the passage quoted in the text uses the word "sealing," much of Judge Bryson's August 7, 2020 Opinion and Order discusses redaction. Thus, the reasoning in Lipocine informs the analysis of the February 26, 2025 motion to redact, although Mr. Sanchez and Ms. Sanchez do not request that the February 13, 2025 Order be sealed.

9

bid protests, the Court of Federal Claims has independently assessed proposed redactions.  MVL USA, Inc. v. United States, 174 Fed. Cl. 437, 442-43 (Fed. Cl. 2025).

For redaction, the starting point is the Vaccine Act.  Congress provided:

> a decision of a special master or the court in a proceeding shall be disclosed, except that if the decision is to include information –
>
> (i) which is trade secret or commercial or financial information which is privileged and confidential, or
>
> (ii) which are medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy,
>
> and if the person who submitted such information objects to the inclusion of such information in the decision, the decision shall be disclosed without such information.

42 U.S.C. § 300aa–12(d)(4)(B).  As previously mentioned, Congress added this provision to the Vaccine Act as part of the 1989 amendments.  Pub. L. 101-239 § 6601(g)(2).  In the ensuing 30 years, the Federal Circuit has not had an occasion to interpret this statutory provision.  Furthermore, the associated Vaccine Rule, Vaccine Rule 18(b), mirrors the statute.[7]  Thus, there is an absence of binding authority about the meaning of the Vaccine Act's disclosure provision.

Outside of the Vaccine Program, appellate authorities have discussed the public's access to Court information in other contexts.  According to the Federal Circuit, "a complaint---including the parties named in the litigation---must generally be disclosed to the public unless there are compelling countervailing circumstances."  DePuy Synthes, 990 F.3d at 1370 (holding that district court did not abuse its discretion in ordering the filing of an amended complaint without sealed material).  In the context of discussing "the presumption of public access," DePuy Synthes stated that the "law in this regard is substantially the same across circuits: the parties seeking confidentiality must present a strong justification to

---

[7] In 2024, the Court of Federal Claims added paragraphs (c) and (d) to Rule 18. According to the Rules Committee Notes, those subdivisions "provide more explicit requirements concerning motions to redact."

10

overcome the presumption of public access." Id. at 1369 (citing cases); accord Eastern Shipbuilding Group, Inc. v. United States, 166 Fed. Cl. 261, 263 n.* (2023).

**Analysis**

Mr. and Ms. Sanchez propose different rationales for redacting the February 13, 2025 Order.  See Pet'rs' Mot., filed Feb. 26, 2025.[8]  As a preliminary point, they state they "are unaware of why this Order needs to be made public."  Id. at 2; accord Pet'rs' Supp'l Mot. at 2.  They further argue that based upon W.C., Ms. Sanchez's right to privacy outweighs the public's right to know about Ms. Sanchez's mental health condition.  Pet'rs' Mot., filed Feb. 26, 2025, at 3.  They also argue that the publication of the two earlier judicial opinions should not preclude redaction of the February 13, 2025 Order.  Pet'rs' Supp'l Mot. at 2-3. These points are addressed in turn.

   A. Publication of the February 13, 2025 Order

Mr. and Ms. Sanchez first ask whether the February 13, 2025 Order needs to be made available to the public.  They cite no authorities against publication of the February 13, 2025 Order.  Given that this point lacks any meaningful development, it may be the case that Mr. and Ms. Sanchez posed this question solely as a point of rhetorical flourish.

As discussed in the beginning of this order, Congress has required that "decisions" of special masters be made available to the public.  42 U.S.C. § 300aa-12(d)(4)(B).  Mr. and Ms. Sanchez do not cite this statute.  Thus, whether they rely upon this section of the Vaccine Act as the basis for any argument against publication of the February 13, 2025 Order is unclear.

Regardless, the basis for publication is the E-Government Act of 2002, Pub. L. No. 107-347, § 205(a)(5), 116 Stat. 2899, 2913, which was cited in footnote 1 to both the (publicly available) October 28, 2024 Order and the (presently withheld from the public) February 13, 2025 Order.  This section of the Act mandates that the chief judge of the Court of Federal Claims establish and maintain a website that contains or provides a link to "Access to the substance of all written opinions issued by the court, regardless of whether such opinions are to be published in the official court reporter, in a text searchable format."  Despite being cited in the

---

[8] Again, the request to replace the name of the child-vaccinee with initials in future pleadings will be addressed separately.

11

February 13, 2025 Order, Mr. and Ms. Sanchez have not presented any argument about this statute in their pending motion for redaction.

As a statute enacted after the Vaccine Act's publication requirement, the E-Gov't Act expands the group of judicial materials from the Vaccine Program that must be made available to the public. See PDS Consultants, Inc. v. United States, 907 F.3d 1345, 1359 (Fed. Cir. 2018). The term "written opinion" of the E-Gov't Act has been interpreted by the Judicial Conference of the United States to mean "any document issued by a judge or judges of the court, sitting in that capacity, that sets forth a reasoned explanation for a court's decision." Vertex Surgical, Inc. v. Paradigm Biodevices, Inc., 648 F. Supp. 2d 226, 234 (D. Mass. 2009). The February 13, 2025 Order contains the "reasoned explanation" for the outcome of the motion for protective order. Thus, the February 13, 2025 Order is required to be posted on the Court's website.

Furthermore, publication of the February 13, 2025 Order is consistent with a long-standing practice of the Office of Special Masters to publish opinions that are not necessarily "decisions." Examples include rulings finding entitlement to compensation, findings of fact regarding (lack of) receipt of vaccination, findings of fact regarding onset, and orders regarding unusual requests for discovery. The publication of these orders has not engendered any controversy.

For these reasons, Mr. and Ms. Sanchez have not presented any minimally persuasive argument that the February 13, 2025 Order should not be made available to the public.

   B. Reliance on W.C.

Mr. and Ms. Sanchez rely upon the standards for redaction announced in W.C. Pet'r's Mot. at 3. However, as an order from the Court of Federal Claims, W.C. is only persuasive (not binding) precedent in this case and the persuasiveness of W.C. has been mixed. In some cases, special masters have followed W.C. See, e.g., Ranjbar v. Sec'y of Health & Human Servs., No. 15-905V, 2016 WL 4191127 (Fed. Cl. Spec. Mstr. June 21, 2016) (redacting decision awarding damages to initials); C.S. v. Sec'y of Health & Human Servs., No. 07-293V, 2013 WL 4780019 (Fed. Cl. Spec. Mstr. Aug. 19, 2013) (authorizing redaction). However, special masters have also disagreed with W.C. or narrowly limited W.C. to its facts. See, e.g., Anderson, 2014 WL 3294656, at *6 (disagreeing with usefulness of FOIA comparison); House v. Sec'y of Health & Human Servs., No. 99–406V, 2012 WL 402040, at *5-6 (Fed. Cl. Spec. Mstr. Jan. 11, 2012) (declining to grant redaction and rejecting petitioner's argument that the Secretary bears the burden to

show a compelling public interest to justify release of medical information); Pearson v. Sec'y of Health & Human Servs., No. 03–2751V, 2011 WL 4863717, at *5 (Fed. Cl. Spec. Mstr. Sept. 22, 2011) (declining to grant redaction and stating "Petitioner's preference to keep her damages award private is not a sufficient reason to satisfy the [statutory] criteria and justify redaction in this case").

W.C. criticized the special master for beginning the analysis of whether decisions should be redacted with a general presumption that decisions of judicial officers are open to the public. W.C. states an analogy to the openness of judicial files is "inapposite." 100 Fed. Cl. at 460.[9] However, W.C. did not account for the series of legislation that placed the Office of Special Masters within the federal judiciary. Under the presumption that Congress is assumed to be aware of background principles when enacting legislation, see Rhone Poulenc Agro, S.A. v. DeKalb Genetics Corp., 284 F.3d 1323, 1329 n.3 (Fed. Cir. 2002), it can be inferred that Congress's choice endorsed routine publication of decisions of special masters. See Anderson, 2014 WL 3294656, at *3; Castagna, 2011 WL 4348135, at *10.

Although W.C. did not discuss Congress's placing of the Office of Special Masters within the Claims Court, W.C. relied upon two other legislative acts to support redaction. First, W.C. cited 42 U.S.C. § 300aa–25(c). 100 Fed. Cl. at 457-58. Second, W.C. cited a portion of legislative history, S. Rep. No. 99-483 (1986). Id. at 457. However, neither informs the analysis of whether special masters should redact petitioner's names from their decisions.

Section 25 is part of title 42, chapter 6A, subchapter XIX, part 2, subpart C, which is captioned "Assuring a safer childhood vaccination program in United States." Congress directed health care providers to record all vaccine administrations and to report possible adverse reactions to the Secretary. These reports of possible adverse vaccine reactions are submitted to the Vaccine Adverse Event Reporting System ("VAERS"). See Adverse Event Reporting for Childhood Vaccines, 53 Fed. Reg. 10565 (Apr. 1, 1988). In this context, Congress forbade the Secretary from releasing names of vaccine recipients.

---

[9] While traditional litigation in courts differs in some respects from litigation in the Office of Special Masters, most differences such as speedier resolution are not about the public's access to information. The obvious difference – the public cannot access material kept by the Clerk's Office, see 42 U.S.C. § 300aa–12(d)(4) – is immediately contrasted by saying the public can access special masters' decisions.

13

In contrast, the portion of the Vaccine Program that concerns special masters is found within title 42, chapter 6A, subchapter XIX, part 2, subpart A, which is captioned "Program requirements." This provision does not explicitly forbid special masters from including names of petitioners in their decisions. Congress's choice to prevent disclosure of identifying information in one subpart, for the purpose of gathering vaccine administration data, implies that a disclosure of the same information under a different subpart, for the purpose of adjudicating vaccine claims, is permitted. See Figueroa, 715 F.3d at 1322-23 (discussing interpretive canon expressio unius est exclusion alteris).

Similarly, Senate Report No. 99-483, which W.C. cited, was associated with S. 827 as introduced on September 24, 1986. That version of S. 827 pertains to the Secretary's anticipated efforts to improve the safety of vaccines and did not contain a compensation program. See Castagna, 2011 WL 4348135, at *6 n.8. Thus, the legislative history associated with S. 827 appears to shed little light on whether a compensation program should redact decisions of judicial officers.

For these reasons, neither the petitioners nor W.C. justifies turning away from the principle within the federal judiciary that promotes public access to decisions of special masters. See Depuy Synthes, 990 F.3d at 1369 (recognizing a "presumption that judicial records should be available to the public) (citation omitted); Eastern Shipbuilding Group, Inc. v. United States, 166 Fed. Cl. at 263 n.* (there is a "strong presumption in favor of a common law right of public access to court proceedings") (citation omitted). Rather than look to analogues from traditional litigation, W.C. borrowed from FOIA, maintaining that the similarity in wording between one aspect of the Vaccine Act and one aspect of FOIA justified a holding that the statutes should be interpreted similarly. However, the similarity in wording becomes a more meaningful basis for analysis when two statutes are directed to the same purpose. See Wachovia Bank v. Schmidt, 546 U.S. 303, 315-16 (2006) (refraining from applying the in pari materia canon for statutes addressing venue and subject matter jurisdiction); Erlenbaugh v. United States, 409 U.S. 239, 243-44 (1972). But, FOIA and the Vaccine Act do not share a common purpose. Anderson, 2014 WL 3294656, at *7; House, 2012 WL 402040, at *6; but see C.S., 2013 WL 4780019, at *2-3. For these reasons, W.C. does not control the outcome of the pending motion to redact.

C. <u>Mr. and Ms. Sanchez have not justified redaction of the February 13, 2025 Order</u>

The heart of the February 26, 2025 motion is a request to redact information about Ms. Sanchez's mental health condition, her therapist (Mr. Britt), and associated words and phrases. This request is based upon the Vaccine Act's provision that the withholding from a publicly available decision any medical information whose disclosure "would constitute a clearly unwarranted invasion of privacy." 42 U.S.C. § 300aa-12(d)(4)(B)(ii).

Here, a publication of the February 13, 2025 Order would not invade Ms. Sanchez's privacy because Ms. Sanchez's privacy interest has been largely undermined (if not entirely eliminated) by the previous publication of the October 28, 2024 Order Denying Motion for Protective Order and Compelling Production of Mental Health Records and the December 2, 2024 Order and Opinion from Chief Judge Kaplan. As noted above, both these documents state that Mikal Britt has diagnosed Ms. Sanchez as suffering from posttraumatic stress disorder and the petitioners invoked the psychotherapist-patient privilege to argue against the production of Ms. Sanchez's mental health records. It is difficult to see how redaction of the February 13, 2025 Order, which follows and builds upon the October 28, 2024 Order and the December 2, 2024 Order and Opinion, would protect Ms. Sanchez's privacy, which was largely (if not entirely) lost by the previous publications.[10] <u>C.f.</u> <u>Insulet Corp. v. Eoflow, Co. Ltd.</u>, 104 F.4th 873, 882 (Fed. Cir. 2024) (discussing whether the availability of public information precludes a finding of a trade secret).

On at least two occasions, judicial officers in the Vaccine Program have also reasoned that the disclosure of information in an earlier opinion precluded redaction of the same information in a later opinion. The first instance occurred in the context of claims brought on behalf of three siblings, Maeve, Katherine, and Colin Brynildson. In denying compensation for Maeve and Katherine, the special

---

[10] As to the October 28, 2024 Order, Mr. and Ms. Sanchez assert that "decisions exist where Special Masters have 'unpublished' prior decisions and then redacted." Pet'rs' Reply at 2. However, Mr. and Ms. Sanchez have cited no examples. As a practical matter, Mr. and Ms. Sanchez have not proposed any method by which the October 28, 2024 Order could be removed from any electronic sources and databases that have already captured it in its unredacted form. <u>See</u> <u>Browning for Colin Brynildson v. Sec'y of Health & Hum. Servs.</u>, No. 07-453V, 2010 WL 4359233, at *1 n.3 (Fed. Cl. Spec. Mstr. Nov. 1, 2010) ("In the electronic era, when third parties disseminate decisions almost immediately upon publication, it is impossible effectively to 'un-publish' them.").

15

master also disclosed information about Colin due to a possibility of a genetic basis for the children's health problems. See Browning for Maeve Brynildson v. Sec'y of Health & Hum. Servs., No. 02-0928V, 2010 WL 1407212, at *4 n.4 (Fed. Cl. Spec. Mstr. Mar. 19, 2010); Browning for Katherine Brynildson v. Sec'y of Health & Hum. Servs., No. 02-0929V, 2010 WL 1407973, at *3 n.5 (Fed. Cl. Spec. Mstr. Mar. 19, 2010). After the special master issued a decision regarding attorneys' fees in Colin's case, the petitioner sought redaction of Colin's name and his medical history. The special master, however, denied most redaction requests and allowed redaction of Colin's medical history only to the extent that the previous decisions did not reveal this information. Browning for Colin Brynildson v. Sec'y of Health & Hum. Servs., No. 07-453V, 2010 WL 4359233 (Fed. Cl. Spec. Mstr. Nov. 1, 2010).

The second instance is more straightforward. In this example, the (undersigned) special master denied entitlement. Tarsell v. Sec'y of Health & Human Servs., No. 10-251V, 2016 WL 880223 (Fed. Cl. Spec. Mstr. Feb. 16, 2016). This decision identified some doctors who treated the vaccinee. After the petitioner filed a motion for review, the Court vacated the underlying decision. Tarsell v. United States, 133 Fed. Cl. 782 (2017). The petitioner then sought redaction of the Court's Opinion and Order. However, the Court denied redaction of its Opinion and Order because, in part, the petitioner proposed to redact information that was already available to the public through the underlying special master's decision. Tarsell v. United States, 133 Fed. Cl. 805, 807 (2017).

Thus, Ms. Sanchez has not justified that she has a significant privacy interest in preventing the re-disclosure of her mental health problem or her therapist. The motion to redact these portions of the February 13, 2025 Order can be denied on this basis alone.

However, even if Ms. Sanchez could be viewed as having a privacy interest in information that is already in the public domain, that simple showing does not suffice to establish a persuasive ground for redaction. The Vaccine Act authorizes redaction of medical information only when the dissemination of the medical information is "clearly unwarranted."

Like the October 28, 2024 Order, which compelled the release of Ms. Sanchez's mental health records, the February 13, 2025 Order discusses Ms. Sanchez's posttraumatic stress disorder and Mr. Britt's assessment of it only because those were the issues Mr. and Ms. Sanchez raised. Eliminating references to Ms. Sanchez's mental health (as petitioners request) would make the February 13, 2025 Order unintelligible.

The impracticality of Mr. and Ms. Sanchez's request is most evident with their proposal to redact information that comes from cases the Secretary cited, such as State v. Anderson, 162 Idaho 610, 402 P.3d 1063 (2017). The February 13, 2025 Order detailed information from the Anderson opinion, including that a complaining witness, Erica Messerly "sought care for post-traumatic stress disorder and substance use disorder." Slip op. at 19. Mr. and Ms. Sanchez sought redaction of the phrase "post-traumatic stress disorder and substance abuse disorder." See Pet'rs' Supp'l Mot., attachment. Although not spelled out, Mr. and Ms. Sanchez apparently reason that the information about Ms. Messerly should be redacted from the February 13, 2025 Order because otherwise a reader of the (redacted) February 13, 2025 Order would infer that Ms. Sanchez, like Ms. Messerly, suffers from post-traumatic stress disorder. But, the information about Ms. Messerly exists in the opinion as found in the Idaho and Pacific Third reporters. By consulting either of these publicly available sources, a member of the public reading the February 13, 2025 Order can easily fill in information that Mr. and Ms. Sanchez requested to be redacted.

In arguing that the publication of Ms. Sanchez's mental health information would constitute a clearly unwarranted invasion of privacy, Mr. and Ms. Sanchez cite W.C., 100 Fed. Cl. at 461. Pet'rs' Reply at 3. According to them, W.C. stands for the proposition that "a reason for publishing is that the Vaccine Act aims to increase public awareness of vaccines and the medical conditions they may cause." Id. (emphasis in original). This statement does not mean that Mr. and Ms. Sanchez have established the need for redaction of the February 13, 2025 Order. Publicizing information about vaccines and medical conditions that they may cause is "a reason," but not the only reason for publication. Special masters also make available to the public decisions awarding attorneys' fees, orders regarding discovery, and orders regarding requests for redactions. Thus, the field of topics about which special masters may make information available to the public is broader than how the Sanchezes portray it.

## Conclusion

As to the February 13, 2025 Order, Mr. and Ms. Sanchez have not established a persuasive basis for redaction. In American jurisprudence, there is a long history of making opinions from judicial officers available to the public. This tradition is carried forward by the Vaccine Act and the E-Government Act of 2002. The finding that Mr. and Ms. Sanchez have not carried their burden for redaction primarily rests upon the publication of the information that Mr. and Ms. Sanchez

17

seek to be withheld through the October 28, 2024 Order and the December 2, 2024 Opinion and Order.

The February 26, 2025 motion for redaction of the February 13, 2025 Order is DENIED.  Furthermore, this order, too, will become available to the public after the time for Mr. and Ms. Sanchez to file a motion for review has elapsed.  Although petitioners did not seek a stay, publication of this order will be delayed.

**IT IS SO ORDERED**.

s/Christian J. Moran
Christian J. Moran
Special Master
