# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * * *
GERMAIN SANCHEZ and          *
JENNIFER SANCHEZ,            *
parents of T.S.,            *
                            *      No. 11-685V
            Petitioners,    *
                            *      Special Master Christian J. Moran
v.                          *
                            *
SECRETARY OF HEALTH         *      Filed: September 30, 2025
AND HUMAN SERVICES,         *
                            *
            Respondent.     *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

Lisa A. Roquemore, Law Offices of Lisa A. Roquemore, Rancho Santa Margarita, CA, and Richard Gage, Richard Gage, P.C., Cheyenne, WY for petitioners; Jennifer L. Reynaud, Zoe Wade, and Madylan Yarc, United States Dep't of Justice, Washington, DC, for respondent.

### FINDINGS REGARDING DAY PLANNER[1]

      Mr. and Ms. Sanchez claim a vaccination harmed their son, T.S. Although the Federal Circuit found that they were entitled to compensation, the Secretary is seeking a sanction of dismissal for litigation misconduct. One, but not the only, basis concerns the production of Ms. Sanchez's day planner. Ms. Sanchez testified at a hearing held on June 2-3, 2025. Based upon all the evidence and arguments,

---

[1] Because these Findings contain a reasoned explanation for the action in this case, the undersigned is required to post them on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This means the Findings will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), petitioners have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material before posting the decision.

the undersigned finds that litigation misconduct (tampering) occurred with respect to the production of the day planner.

## BACKGROUND

### Creation of Day Planner in 2008-09

At the age of six months, T.S. received the vaccinations at issue. At the time, Ms. Sanchez had many obligations. She was pregnant with another child. She was working for the United States Postal Service as a mail carrier. Tr. 4139. She also was responsible for paying the family's bills. Id. at 4132. She recorded much of the information about her family's life in a day planner.[2] Mrs. Sanchez also charted some information about her health as well as T.S.'s health in the day planner.

The day planner appears to be a typical planner.[3] Each week (Monday to Sunday) appears on two facing pages. The day planner runs from August 2008 through December 2009. The pages are bound with metal rings, which are separable. At the bottom right of every pair of pages, there is a mini-calendar showing the current month and the next month. A sample page is shown below:

---

[2] Sometimes, the "day planner" is referred to as a "journal," "calendar," or "day timer." However, Ms. Sanchez's day planner is not the same as T.S.'s baby book.

[3] A black and white photocopy of a portion of the day planner was filed as Exhibit 58 on December 12, 2014. A color photocopy of the complete day planner, with redactions on information regarding passwords, is in the record as Court Exhibit 1004.



According to reviews of this day planner posted to Amazon, most people found it useful.[4]

Ms. Sanchez filled in the weekly planner by hand with ink.  The day planner contains reminders about upcoming appointments, birthdays, family events, work schedules, and bill payments.  Additionally, Ms. Sanchez often wrote notes and recaps of her appointments, events, and overall day afterwards, noting things such as what doctors had said, stating whether she enjoyed the events, and memorializing various activities she had done.  Ms. Sanchez also wrote about her own health and pregnancy symptoms.  The day planner proceeds conventionally from its start date of July 28, 2008 through March 13, 2009.

However, in the version filed as an exhibit, on March 14, 2009, the pages switch to November dates.  March 14, 2009 through April 10, 2009 are instead filled with the pages for November 14, 2009 through December 4, 2009, with handwritten corrections over the November and December dates to conform them to March and April dates.  Exhibit 58 at 11-14; Exhibit 1004 at 39-42; Tr. 4104.  The last page in this range has been hand-adjusted to cover twelve days instead of five, realigning the dates so that the next page properly falls back to Saturday, April

---

[4] The undersigned used the ISBN number located on the back of the day planner (978-1-60434-137-9) to search for it on Amazon.  The reviews are in the record as Court Exhibit 1005.

3

11, 2009.  The remainder of the pages in the day planner have the correct dates, including the November and December 2009 pages.  A sample of pages with the date discrepancies is shown below:







<u>Initiation of Litigation and Gathering Documents in 2011</u>

Approximately 17 months after T.S.'s vaccination, Mr. and Ms. Sanchez consulted attorney Lisa Roquemore. Timesheets.[5]  Ms. Roquemore agreed to represent the family in April 2011. Timesheets at 7; Supp'l Decl. ¶ 10.[6]

For the family to succeed in their claim, Mr. and Ms. Sanchez were required to establish that T.S. first developed problems within a time for which an inference of causation is appropriate.  <u>Bazan v. Sec'y of Health & Hum. Servs.</u>, 539 F.3d 1347, 1353 (Fed. Cir. 2008).  The predominant way for demonstrating when a vaccinee first manifested a symptom or sign of an injury allegedly related to a vaccination is to rely upon medical records created during the critical time. Arguably, in the absence of a medical record created during the critical time, another relevant source of information could be another document created during the critical time.  <u>See</u> <u>Richardson v. Sec'y of Health & Hum. Servs.</u>, No. 90-324V,

---

[5] The Timesheets were attached to petitioners' first motion for an award of attorneys' fees and costs on an interim basis, filed Sep. 16, 2014, as Exhibit 2.

[6] Ms. Roquemore detailed her representation of the family in a Supplemental Declaration in support of the first motion for attorneys' fees and costs, filed Dec. 12, 2014.

1991 WL 67483, at *2-3 (Cl. Ct. Spec. Mstr. Apr. 16, 1991) (crediting oral testimony based upon a diary).

Ms. Roquemore began to develop the case more actively in August 2011.[7]  A problem was that the medical records created on February 17, 2009; April 29, 2009; and May, 13, 2009 do not memorialize any complaint to a health care provider about arm contortions, which could be understood as a manifestation of a neurologic problem.  Exhibit 1 at 48-53.  The first medical record recognizing arm contortions was created by a neurologist, Dr. Michelson, on November 12, 2009.  Exhibit 1 at 140.  And even this note does not state when the arm contortions first began.

Ms. Sanchez provided her day planner to Ms. Roquemore.  Supp'l Decl. ¶ 16; Tr. 4115.  In August 2011 Ms. Roquemore reviewed the day planner often.  See Timesheet entries for Aug. 5, 2011; Aug. 17, 2011; Aug. 23, 2011 ("Review Jennifer's Journal for 2009. (.8)"; Aug. 25, 2011; Aug. 29, 2011 ("Review 'original' of journal for half of 2008 and all of 2009. (.5)".

In August and September 2011, Ms. Roquemore assisted her clients and other family members with preparing affidavits.  See, e.g., Timesheet entries for Aug. 5, 2011; Aug. 17, 2011; Sep. 1, 2011; Sep. 5, 2011; Sep. 6, 2011; Sep. 7, 2011.

On behalf of the Sanchezes, Ms. Roquemore submitted the petition for filing on October 17, 2011.  Ms. Roquemore submitted a first set of exhibits, which did not include the day planner.  Ms. Roquemore maintained that the Vaccine Rules require the submission of only medical records and because the day planner is not a medical record, she did not have to present the day planner.  Supp'l Decl. ¶¶ 50, 52.  (Whether Ms. Roquemore correctly understood her duty as an officer of the court is not addressed in this finding.)

Rather than relying upon medical records that T.S.'s doctors created while treating him 2009, Mr. and Ms. Sanchez relied upon their own recollections.  According to Ms. Sanchez, Mr. Sanchez, and other family members, within about two weeks of the vaccination, T.S. began to contort his arm.  See Exhibits 3-7 (affidavits).

---

[7] The Secretary's pending motion for sanctions also is based upon misconduct concerning the lack of production of medical records created by Dr. Valencia and Dr. Brown in August 2011. However, the present finding of fact does not address the records created by Dr. Valencia or Dr. Brown.

Resolution of Dispute over Onset of Arm Contortions in 2012

The Secretary reviewed this evidence, including the affidavits. The Secretary maintained that "petitioners have not shown that T.S. suffered from either seizures or developmental delay within an appropriate temporal relationship to the February 5, 2009 vaccines." Resp't's Rep't, filed Feb. 28, 2012, at 11.

In due course, a hearing to receive oral testimony about T.S.'s health was scheduled. Order, issued March 23, 2012 (scheduling a hearing for May 15, 2012). Leading up to the hearing, Ms. Roquemore conferred with the Sanchezes and collectively they considered whether to submit the day planner. Ultimately, the decision was made to not submit the day planner. Tr. 4395-99; Supp'l Decl. ¶ 50; see also Tr. 4189; Timesheet entries for Mar. 8-9, 2012.[8]

Following the hearing, the undersigned found how the evidence preponderated. The evidence weighed in favor of finding that T.S. did not contort his arms in February, March, or April 2009. Ruling Finding Facts, ¶¶ 11-17, 2013 WL 1880825, issued Apr. 10, 2013. The undersigned credited the accuracy of Ms. Marin-Tucker's August 17, 2009 medical record that memorialized Ms. Sanchez's statement that she noticed a change in T.S.'s development two to three months before the appointment and did not accept Ms. Sanchez's testimony that the change started five to six months earlier. Id. at *8 n. 10. The basic reasoning was that if T.S. were contorting his arms as frequently as his family asserted, then Ms. Sanchez would have sought treatment, and a doctor would have memorialized a complaint about arm contortions. See Ruling. The Ruling did not find that any family member testified dishonestly.

_____

[8] Relevant portions of Ms. Roquemore's timesheet entries include:

3/8/2012    "Review day planner in day to day detail and draft memorandum regarding pros and cons of providing day planner as evidence (1.1). Telephonic conference with Jennifer Sanchez . . . and go over day planner in detail so that clients can decide whether it gets filed based on risks and benefits addressed. Go over declarations compared to day planner and medical records. [time for these activities, including activities omitted by the ellipses totals 1.3]. Review e-mail from Jennifer requesting my memorandum pertaining to day timer. (1) Draft e-mail in response. (.1)."

3/9/2012    "Review e-mail from Jennifer regarding decision to not use the day timer. (.1) Draft e-mail in response and regarding trial date (.1)."

In her supplemental declaration, Ms. Roquemore averred: "Decisions made in this particular case regarding whether to file certain day timers/planners, and photos are decisions that, I felt, were decisions to be made by the attorney and the client, which is what happened."

### Discovery of Day Planner in 2014

The Sanchezes sought an award of Ms. Roquemore's attorneys' fees and costs on an interim basis. Pet'rs' Mot. for Interim Fees, filed Sep. 16, 2014. Ms. Roquemore's timesheets are Exhibit 2 to that document.

The timesheets revealed that Ms. Sanchez created a day planner in 2009, which had not been produced into evidence. Upon being informed via Ms. Roquemore's time entry that a day planner existed, the Secretary sought production of it. See Resp's Resp. filed Nov. 24, 2024, at 2 n.1; Order, issued Dec. 2, 2014.

Ms. Sanchez averred that she "made a few notes regarding T.S." Exhibit 56 (affidavit) at 2. A copy of the day planner was filed in black and white as Exhibit 58.

The production of the day planner in 2014 did not affect whether Mr. and Ms. Sanchez were entitled to compensation. See Opinion and Order, 142 Fed. Cl. 247, 251 (2019) (denying motion for review), vacated on other grounds, 809 Fed. App'x 843 (Fed. Cir. Apr. 7, 2020).

### Finding of Entitlement and Pending Motion for Sanctions

A long series of events followed, but none particularly concerned the production of the day planner. Eventually, the Federal Circuit found that Mr. and Ms. Sanchez were entitled to compensation and the Federal Circuit remanded to determine damages. 34 F.4th 1350 (Fed. Cir. 2022). As part of the discovery process for quantifying the amount of compensation, the Secretary discovered that Ms. Sanchez failed to produce multiple medical records during the entitlement stage. These belatedly produced documents are a foundation for the pending motion to reopen. Resp't's Mot. to Reopen, filed Aug. 16, 2023; Resp't's Comp. Br., filed Jan. 11, 2024; Pet'rs' Comp. Resp., filed May 9, 2024.

The omission of these medical records also serves as a basis for the Secretary's pending motion for sanctions, filed Oct. 23, 2024. As relevant to this finding, the Secretary also argued: "While it is possible that Ms. Sanchez altered the Day Planner on her own initiative, it is logical to infer that Ms. Roquemore was at least aware of the alteration, given her close and repeated study of the document." Resp't's Mot. for Sanctions at 11.

Mr. and Mrs. Sanchez contended that the Secretary could have discovered why the pages were as they were in 2014, approximately one decade earlier. Pet'rs' Resp., filed Nov. 6, 2024, at 10. Mr. and Ms. Sanchez did not assert that the day planner was authentic. At best, they argued that the Secretary's discovery of

out-of-order pages "does not mean Mrs. Sanchez'[s] day planner was not a true and correct copy."  Id.[9]

Hearing and Post-Hearing Activities

In anticipation of testimony about the production of evidence, Ms. Sanchez was directed to bring her original day planner to the hearing. Order, issued May 6,

---

[9] The entirety of petitioners' response to the Secretary's argument that misconduct occurred in 2014 when the day planner was submitted is as follows:

> Respondent submits that Mrs. Sanchez['s] declaration, (Exhibit 56 at 3) stated that Exhibit 58 was a true and correct copy of [her] 2009 Day Planner.  Then, Respondent alleges, without any evidence, that the Day planner had been altered.  First, it needs to be observed that Petitioner was not the one who wanted to file the Day Planner.  It was not relied upon during the entitlement phase of the case.  Rather, she was Ordered to file it when Respondent wanted it produced and had questions about it during the 2014 Fee Application process.  Although Respondent had the Day Planner in 2014, and admittedly commented upon it during the first Motion for Review proceeding, Respondent did nothing to discover why the pages were as they were, which does not mean Mrs. Sanchez' day planner was not a true and correct copy.  As it was noted by Respondent, Respondent had, again, ample opportunity to raise this issue and did not.  Instead, Respondent now makes up a fiction to fit his narrative.  Respondent then argues, in an inuendo fashion, it was possible that Mrs. Sanchez altered the Day planner on her own initiative, but it is logical to infer that Ms. Roquemore was at least aware of the alterations and did not correct the Special master's misunderstanding that pursuant to Vaccine Rule 2c (2) (discussing the requirement to file all medical records.) that "petitioners appear to have complied with the obligation."  First Respondent assumes a misunderstanding existed by this court.  And, more importantly, Respondent is taking things out of context.  The Special master was specifically referring to *Medical* records when he stated that it appeared we had complied with the obligation.

> > ... 1.  The undersigned is concerned about the completeness of petitioners' presentation of evidence.  Pursuant to Vaccine Rule 2( c )(2), petitioners are required to submit all *medical records*.  Petitioners appear to have complied with this obligation.

> (See Order, issued Dec. 2, 2014) (Emphasis added.)

> The Day Planner is not a medical record.  The Special Master and Ms. Roquemore had a difference of opinion of what the Rules versus the Guidelines required at the time of the filing of the Petition in 2011.  The bottom line regarding this issue and nearly every issue raised in Respondent's frivolous motion, is that Respondent presents a very misleading and inaccurate argument; and, Respondent had this Day Planner in 2014 and did nothing.

Pet'rs' Resp., filed Nov. 6, 2024, at 10-11.

2025.  She testified on June 2, 2025.  To accommodate Ms. Sanchez's post-traumatic stress disorder, she was given more frequent and longer breaks whenever she felt stressed.

Ms. Sanchez testified that she modified her day planner because the original day planner contained a "manufacturer defect."  Tr. 4105.[10]  Ms. Sanchez recognized that when the petitioners submitted the day planner as Exhibit 58 in 2014, she did not disclose that she had altered the day planner when she was using it in 2009.  Tr. 4112; see also Exhibit 56 (affidavit attesting to the genuineness of Exhibit 58).

Ms. Sanchez presented the original day planner from 2009.  After the hearing, the undersigned submitted the original day planner to the Clerk's Office as an exhibit that the Clerk's Office will retain until the disposition of this case and any ensuing appellate review.  Order, issued June 25, 2025.  A color copy of the day planner was filed into evidence as Court Exhibit 1004.  Id.

Information from the original day planner (the ISBN number) was used to search for product reviews.  Those were filed as Court Exhibit 1005.  Order, issued June 25, 2025.

After the hearing, the undersigned advised, in part, that the evidence supported a finding that "Ms. Sanchez altered the day planner prior to submitting it into evidence."  Order, issued June 23, 2025.  Mr. and Ms. Sanchez were permitted time to present evidence such as a statement from the day planner's manufacturer that the day planner was printed in error.  Id.

Mr. and Ms. Sanchez submitted information about manufacturing of day planners generally.  Exhibits 349-51 (filed July 24, 2025), Exhibit 352 (filed Aug. 21, 2025).  The Secretary maintained that "the current record, viewed as a whole, still supports the Court's finding that Ms. Sanchez altered her day planner before submitting it into evidence."  Resp't's Status Rep't, filed Sep. 17, 2025.

## STANDARDS FOR ADJUDICATION

The Secretary did not propose a standard by which the motion for sanctions should be adjudicated.  See Resp't's Mot., filed Oct. 23, 2024.  Mr. and Ms. Sanchez propose "clear and convincing evidence."  Pet'rs' Resp., filed Nov. 6, 2024.  "Clear and convincing evidence," in turn, means "evidence which produces

---

[10] The explanation of a manufacturing defect was not raised previously.  See, e.g., Pet'rs' Resp., filed Nov. 6, 2024, at 10-11; see also footnote 9, quoting this source.

in the mind of the trier of fact an abiding conviction that the truth of a factual contention is 'highly probable.'"  Miller v. Department of Justice, 842 F.3d 1252, 1257-58 (Fed. Cir. 2016).

## ANALYSIS

To start, the day planner, as filed, is--to use a nonjudgmental word--unusual. Most pages contained a small representation of the full calendar for the current month and next month.  However, for a period beginning in March, which is when T.S. was contended to be contorting his arms multiple times per day, the pattern is disrupted.  The pages from March 14 through April 10 show small representations of the calendars for November and December, rather than March and April or April and May.  Court Exhibit 1004 at 39-42.  In addition, the printed name of the month ("November") has been crossed out in handwriting and replaced with the name of the current month ("March").  The pages from November 2009, which are near the back of the book, are much less worn. During her testimony, Ms. Sanchez agreed that these "true" November pages are crisper, more pristine, and straighter than the pages in the rest of the book.  Tr. 4108.

The ensuing question is: how did these abnormalities in the day planner develop? The parties presented two alternatives. In her testimony, Ms. Sanchez suggested it was a "manufacturer defect."  Tr. 4105. In disagreement, the Secretary accused Ms. Sanchez of opening the spiral rings that bind the day planner's pages, removing the original pages from March 2009, and installing replacement pages. Tr. 4111.  Based upon the current record, the Secretary is much more persuasive.

Ms. Sanchez's argument that a company, which is in the business of manufacturing and selling day planners, erred in creating a calendar appears unlikely. The purpose of a day planner is to organize and to keep track of events and this purpose is contingent upon an accurate representation of days, weeks, and months of the year.  January is the first month, February is the second month et cetera.  Sundays precede Mondays and Mondays precede Tuesdays.  It is difficult to see how a company could deviate.  However, the evidence that Mr. and Ms. Sanchez produced after the hearing shows that "day planners---other than the kind used by Ms. Sanchez---may have had occasional manufacturing defects."  Resp't's Status Rep., filed Sep. 17, 2025.  This evidence makes Ms. Sanchez's account conceivable, but it remains unlikely.

The Amazon reviews for Ms. Sanchez's day planner do not mention a manufacturing defect or any issue with the pages.  The planner received an average rating of 4.2 out of 5 stars, with complaints being that the cover was not sturdy, the pages needed to be bigger, and that one purchaser in 2014 received a 2006 version

of the day planner instead of the 2008-2009 version. Exhibit 1005. This evidence, which is about the day planner Ms. Sanchez purchased and used, merits more weight than reviews of other products that Ms. Sanchez did not use. See, e.g., Exhibit 352.

In addition, other circumstances surrounding the day planner call into question its genuineness and authenticity. First, the calendar as produced shows that on February 16, 2009, Ms. Sanchez wrote, "[T.S.] didn't sleep well. He was crying a lot, making weird movements [with] his arms and hands." Exhibit 58 at 8; Court Exhibit 1004 at 36. Then, on February 17, 2009, Ms. Sanchez noted that she brought T.S. to urgent care and she was "worried about [T.S.]. He's not the same."[11] Id. Provided these notations are truthful, they could be strong evidence that T.S. was contorting his arm on February 16, 2009. However, Ms. Roquemore studied the day planner to see whether it corroborated the family members' account that T.S.'s abnormal arm movements started close to his mother's birthday on February 15. Supp'l Decl. ¶ 16; see also Tr. 4375. She averred that she found "a few notations" that corroborated the timeline, but that she ultimately "did not feel that the day timer added much; and, from prior experience, calendars and day timers are subject to misinterpretation or a different interpretation notwithstanding the author testifying as to any given meaning within the day planner." Supp'l Decl. ¶ 16. Ms. Roquemore further stated that "Decisions made in this particular case regarding whether to file certain day timers/planners, and photos are decisions that, I felt, were decisions to be made by the attorney and the client, which is what happened." Id. at ¶ 50; see also Tr. 4396. During the hearing, Ms. Sanchez could not recall who ultimately decided that the day planner would not be filed. Tr. 4189-90.

Another abnormality appears on the pages for February 2 through February 8, 2009. There is an entry on Monday, February 2, 2009 about T.S.'s 6 month checkup, vaccination, and subsequent "cranky, fussy" mood and fever. This entry is crossed out and then moved to February 5, 2009, which was the true date of the appointment and vaccination. The comment "silly me" appears next to the erroneous entry, indicating that Ms. Sanchez filled in the wrong date and later corrected herself. The entries for Tuesday, February 3, and Wednesday, February 4, are mostly whited out, with the exception of "I feel so sick" written on February 3. The white-out is not visible on scanned copies of the day planner, and only became apparent upon examination of the physical day planner. To show this, a

---

[11] The February 17, 2009 appointment was with PA Luna. T.S. was diagnosed with a common cold and viral syndrome. Exhibit 1 at 48-49.

photograph of the page has been substituted for the scanned copy of the page in the color exhibit.  See Exhibit 58 at 6; compare Court Exhibit 1004 at 34.  Through the page, one can read that the whited-out entries once said "T.S. is fussy, cranky" and "Still fussy".  It appears that these entries were also moved to later dates; Friday, February 6, reads "T.S. is so fussy, cranky. Hard sleeping" while Saturday, February 7, reads "Still cranky & fussy."  It is unclear why these were whited out instead of simply crossed out as with the other entry.  And, as with the February 16 and 17 entries regarding T.S.'s movements, this information seems relevant and helpful to the Sanchezes' claim, and it is unclear why the day planner would not have been filed to show this information.  The photograph of these pages is shown below.



Next, when Ms. Sanchez was finally ordered to produce the day planner, she averred it was a "true and accurate" copy.  Exhibit 56 ¶ 5.  As noted above, she did not disclose that the "true and accurate" day planner contained a manufacturing defect.  Including this information would have enhanced Ms. Sanchez's credibility.

Furthermore, Ms. Roquemore studied the day planner for a relatively lengthy amount of time.[12]  Special masters, including the undersigned, have found that Ms. Roquemore charges an unreasonable amount of time for some activities. See, e.g., First Decision Awarding Attorneys' Fees and Costs, issued Feb. 17, 2016, 2016 WL 909186 (excessive time spent preparing for a one-day hearing); Basdakis v. Sec'y of Health & Hum. Servs., No. 20-1158V, 2025 WL 455394 (Fed. Cl. Spec. Mstr. Jan. 16, 2025) (reduction of 10% for excessive billing practices); J.T. v. Sec'y of Health & Hum. Servs., No. 12-618V, 2018 WL 4623163 (Fed. Cl. Spec. Mstr. Apr. 20, 2018) (excessive billing on various tasks including determining lost earnings, reading and analyzing a ruling, and moving for redaction); D.S. v. Sec'y of Health & Hum. Servs., No. 10-77V, 2017 WL 6397826 (Fed. Cl. Spec. Mstr, Nov. 20, 2017) (excessive client communications, duplicative billing, and administrative tasks); Broekelschen v. Sec'y of Health & Hum. Servs., No. 07-137V, 2011 WL 2531199 (Fed. Cl. Spec. Mstr. June 3, 2011) (unreasonable amount of time spent on briefing and preparing for oral argument), mot. for rev. denied, 102 Fed. Cl. 719 (2011).  Even so, it is difficult to understand how much time could be spent on a relatively benign and short document.  Yet, in the hearing, when asked about a time entry concerning her review of "dates of entries," Ms. Roquemore testified that she could not recall any details.  Tr. 4380.  In addition, despite Ms. Roquemore's study of the day planner, neither she nor Ms. Sanchez apparently thought to explain the alleged manufacturing defect when the planner was filed.  See Exhibit 56 ¶ 5 (Declaration of Jennifer Sanchez, providing information about the day planner and other exhibits with no mention of the abnormalities).  When asked about this at the hearing, Ms. Sanchez testified that she "did not know it was a manufacturer's defect" until recently, but that she fixed the pages at the time because they were "messed up."  She could not recall whether she discussed the abnormalities with Ms. Roquemore in 2014.  Tr. 4113-15.

As already stated, the undersigned finds Ms. Sanchez's statement that her day planner contained a manufacturing defect not to be credible.  Instead, the evidence clearly and convincingly favors a finding that Ms. Sanchez altered the day planner before submitting it into evidence.

The undersigned reaches this conclusion with reluctance. Until now, the undersigned has not questioned Ms. Sanchez's veracity or good faith.  Although

---

[12] Due to the overlapping nature of some entries, determining exactly how long Ms. Roquemore spent reviewing the day planner is not possible.  In August 2011, she reviewed the day planner on five dates and the entries for two dates total 1.3 hours.  In March 2012, she spent more than one hour reviewing the day planner and creating a memorandum about the pros and cons of producing it as evidence.

the April 10, 2013 Ruling rejected portions of Ms. Sanchez's testimony, the undersigned did not suggest that Ms. Sanchez was not truthful. However, the same can no longer be said.

When the evidence clearly and convincingly shows that Ms. Sanchez altered evidence, then that conclusion must be reached. See Cal. Penal Code § 134 (preparing false documentary evidence)[13]; People v. Lucero, 254 Cal. Rptr. 3d 233, 285-88 (2019) (materiality is not an element of offense of preparing false documentary evidence); People v. Blaydon, 317 P.2d 24, 29 (1957) (evidence that body of instrument was in defendant's handwriting; signature was forged; defendant handed the instrument with the forged signature to attorney for probate; and that instrument was filed for probate "constitutes proof of the corpus delicti of the offenses charged"); see also 35 Am. Jur. Proof of Facts 3d 567 (1996) (discussion of United States v. Sloan, CR-69-137 (WD Tenn. 1970), in which defendant was convicted of perjury for producing documents dated from 1958 but written in ink that was not made until 1960). The outcome that Ms. Sanchez altered evidence will be considered in adjudication of the pending motion for sanctions.

Some portions of the Sanchezes' opposition to the Secretary's motion to reopen suggest that mistakes about the belated production of medical records happened innocently. Pet'rs' Resp., filed May 9, 2024, at 11 ("some medical records that were not originally received and/or inadvertently not filed, came to light in the Summer 2023"). On the topic of the failure to produce medical records, the excuse of inadvertence may or may not be true. But, that excuse of innocence does not explain the day planner's irregularities. As found here, the evidence clearly and convincingly supports a finding that Ms. Sanchez manipulated the pages. Her actions must have been intentional.

## **CONCLUSION**

Purposeful misconduct in litigation, when established, is a problem that could merit significant consequences to deter others. See Nat'l Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976). Further analysis of how the present finding of fact affects the issues in the pending motion for sanctions is deferred.

---

[13] "Every person guilty of preparing any false or ante-dated book, paper, record, instrument in writing, or other matter or thing, with intent to produce it, or allow it to be produced for any fraudulent or deceitful purpose, as genuine or true, upon any trial, proceeding, or inquiry whatever, authorized by law, is guilty of felony."

**IT IS SO ORDERED.**

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master