# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| TRYSTAL SANCHEZ, by and through his parents, GERMAIN SANCHEZ and JENNIFER SANCHEZ,<br><br>Petitioners,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | No. 11-685V<br>Special Master Christian J. Moran<br><br>Filed: April 16, 2025<br><br>Date Released: January 12, 2026 |

* * * * * * * * * * * * * * * * * * * *

Lisa A. Roquemore, Law Offices of Lisa A. Roquemore, Rancho Santa Margarita, CA, and Richard Gage, Richard Gage, PC, Cheyenne, WY, for petitioners; Jennifer L. Reynaud, United States Dep't of Justice, Washington, DC, for respondent.

## ORDER DENYING MOTION FOR VIDEORECORDING[1]

Mr. and Ms. Sanchez request to videotape an upcoming hearing. Pet'rs' Mot., filed Mar. 19, 2025. The Secretary opposes. Mr. and Ms. Sanchez have not justified a departure from normal procedures. Thus, the motion is DENIED.

\* \* \*

---

[1] Because this order contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

The August 14, 2024 order denying a motion for protective order sets out a chronology of events and explains why a hearing should occur. 2024 WL 4564656. In short, a hearing is being held to receive oral testimony about why the petitioners and their counsel of record, Lisa Roquemore, did not produce various records about the health of the petitioners' son.[2] The testimony may extend to the contents of previously unproduced documents.

In advance of the hearing, Mr. and Ms. Sanchez requested that the hearing be videotaped. Pet'rs' Mot., filed Mar. 29, 2025. To their credit, they acknowledged that they are not aware of any other hearings in the Vaccine Program being videorecorded. This lack of precedent does not dissuade them. They argued that the lack of an explicit prohibition against videorecording suggests videorecording is permitted. They cited Rule 30 of the Federal Rule of Civil Procedure and its counterpart in the Rules of the Court of Federal Claims ("RCFC") as permitting audiovisual recording of depositions. Mr. and Ms. Sanchez argue that an audiovisual recording would allow "an appellate judge, for instance judges at the Federal Circuit [to] view the video [and] they don't have to take someone's word about the demeanor of a witness." Id. at 3.[3] Mr. and Ms. Sanchez conclude that "no good reason exists to not video record this anticipated hearing." Id.

The Secretary disagreed with the proposal to record the hearing by audiovisual means. Resp't's Opp'n, filed Apr. 2, 2025. The Secretary contrasted RCFC 30 with Rule 80.1 of the RCFC, which discusses how hearings are memorialized. The Secretary noted that special masters assess the demeanor and candor of witnesses. Id. at 2, citing Andreu v. Sec'y of Health & Hum. Servs., 579 F.3d 1367, 1379 (Fed. Cir. 2009); Bradley v. Sec'y of Health & Hum. Servs., 991 F.2d 1570, 1575 (Fed. Cir. 1993). The Secretary concluded that: "To the best of respondent's knowledge, information, and belief, no evidentiary hearing in the

---

[2] After the August 14, 2024 order, scheduling the hearing has been slow. Mr. and Ms. Sanchez argued that she could not testify but their arguments lacked persuasiveness. See Order, issued Feb. 13, 2025. In addition, Ms. Sanchez was given an opportunity to present an account of why the documents were not produced in writing by March 21, 2025. Order, issued Mar. 5, 2025. Ms. Sanchez did not provide a statement by this deadline.

[3] In both the petitioners' motion and their reply, the page numbering is wrong because the first page has not been counted as page 1. This order cites to the actual page number, not the page number on the bottom of the motion or reply.

Vaccine Program has ever been video recorded, and petitioners have offered no justifiable basis to proceed differently in this case." Id. at 3.

Mr. and Ms. Sanchez repeated their request for audiovisual recording. Pet'rs' Reply, filed Apr. 8, 2025. They maintained that "just because video recording has not been done in this Vaccine Program does not mean it cannot be done or shouldn't be done in this particular case." Id. at 2. They again liken their request to videorecord a hearing to a plan to videorecord a deposition. Id. Mr. and Ms. Sanchez also assert that there would be no prejudice to creating a videorecord.

\* \* \*

Through the promulgation of the Vaccine Rules, the judges of the Court of Federal Claims have given special masters discretion on how to conduct hearings. Vaccine Rule 8(a) provides: "The special master will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties." This discretion appears compatible with judicial officers' right to control who is present in their courtrooms. See Stevens v. Osuna, 877 F.3d 1293, 1305-08 (11th Cir. 2017).

The Vaccine Rules further define how hearings will be memorialized. "The hearing will be recorded and, upon request of a party or the special master, will be transcribed in accordance with RCFC 80.1." Vaccine Rule 8(c)(3).[4] RCFC 80.1 further anticipates the trial proceedings will be recorded via sound alone. RCFC 80.1 contains no reference to recording trial proceedings by audiovisual mechanisms. The lack of mention of audiovisual recordings for trials implies that audiovisual recordings for trials are not permitted. Cf. United States v. Wells Fargo Bank, 485 U.S. 351, 357 (1988) ("the expression of one is the exclusion of others").

This interpretation is reinforced by looking at Rule 30 of the RCFC, which appears to be petitioners' primary source of authority. RCFC 30(b)(3)(A) states that a party noticing a deposition must state the "method for recording the testimony," which may include "audiovisual… means." The specific allowance of a recording by audiovisual means for a deposition contrasts with its absence in

---

[4] Mr. and Ms. Sanchez have not relied upon the provision of Vaccine Rule 8(b)(2) that authorizes parties to "present evidence in the form of . . . oral testimony which may be given by . . . videotape." Ms. Sanchez's testimony and Ms. Roquemore's testimony have not been videotaped.

3

RCFC 80.1. If the Court wanted to allow audiovisual recording of trial proceedings, it would have amended RCFC 80.1 to be explicit as well.

Mr. and Ms. Sanchez assert that "the fact hearing is very much akin to a deposition." Pet'rs' Reply at 2. Admittedly, in both a deposition and at a hearing, attorneys ask questions and witnesses testify under oath. So, there are some similarities. However, there are differences as well. If depositions were the same as trials, then the Court would not have separate rules for depositions (RCFC 30) and for hearings (RCFC 80.1).

A primary difference between depositions and trials is that the testimony at a trial is before the finder of fact. A trial on the merits is, according to the United States Supreme Court, "the main event, so to speak, rather than a tryout on the road." Shoop v. Twyford, 596 U.S. 811, 819 (2022). In the Vaccine Program, the "main event" is the hearing before the special master. Echols v. Sec'y of Health & Hum. Servs., 165 Fed. Cl. 9, 12 (2023); accord 42 U.S.C. § 300aa–12(d)(3)(A)(i) (directing special masters to make findings of fact).

Within the Vaccine Program, special masters are expected to assess fact witnesses for demeanor and credibility. Andreu, 569 F.3d at 1379.[5] The pending motion appears to be an attempt to create a situation in which "an appellate judge, for instance judges at the Federal Circuit, can view the video." Pet'rs' Mot. at 3. But, appellate judges appear not to have lamented a lack of audiovisual recordings of hearings. Instead, the Federal Circuit appears to accept that finders of fact in various tribunals assess the credibility of the witnesses whom they observe.

Thus, the routine and regular process is for trials to be recorded by audio only. This has been the practice in hearings that have already occurred in the Sanchez case. See Tr. 237-38 (Dec. 4, 2017), Tr. 2007 (July 9, 2020). Mr. and Ms. Sanchez have not proposed any special circumstances in their case that merit blazing a new trail. Whenever judicial officers hold hearings with fact witnesses, some question of fact needs resolution. A judge at the Court of Federal Claims might evaluate the performance of a government contract. An administrative judge of the Merit Systems Protection Board considers testimony about government employment. A jury (or potentially a District Court judge in a bench trial) hears

---

[5] Whether special masters should also assess the demeanor and credibility of expert witnesses might be debated. Compare Andreu with Moberly v. Sec'y of Health & Hum. Servs., 592 F.3d 1315, 1325-26 (Fed. Cir. 2010). But, any debate is reserved for another day because the witnesses at the forthcoming hearing in this case have percipient knowledge about why documents were not produced.

from witnesses in a patent dispute. And so on. All trials, virtually just by definition, contain some disputed issue. Otherwise, there would be no trial. Should all trials be recorded by audiovisual means? Does the Federal Circuit want to review audiovisual recordings in any appeal?

Adding audiovisual recording to audio only recording may (or may not) be a worthwhile innovation. Any consideration of the advantages and disadvantages to changing the present practice is probably best done by the Federal Circuit judicial Council or the Rules Committee of the Court of Federal Claims. See Guide to Judiciary Policy Vol. 10 section 430(j) (stating a "circuit counsel may elect to establish guidelines, or require pre-clearance, for such permitted uses of cameras and other electronic means in the courts of its circuit"). To the undersigned's knowledge, the Federal Circuit Counsel has not established any guidelines for using cameras in a courtroom. Likewise, the Rules of the Court of Federal Claims point away from allowing audiovisual recording.

In evaluating whether to change the common practice, any policy-setting organization may wish to consider whether the presence of cameras in the courtroom will affect the proceedings in the courtroom. See Molly Treadway Johnson & Carol Krafka, Fed. Jud. Ctr., Electronic Media Coverage of Federal Civil Proceedings: An Evaluation of the Pilot Program in Six District Courts and Two Courts of Appeals; see also United States v. Al-Marimi, No. 1:22-CR-392 (DLF), 2024 WL 5226087, at *6 (D.D.C. Dec. 23, 2024) (noting that "A substantial proportion of trial judges and attorneys who participated in that pilot program noted adverse impacts on various aspects of the trial process, including witnesses' willingness to testify and the quality of witnesses' testimony"); id. at *6 n.5 (discussing Johnson & Krafka findings); see also Sunshine in the Courtroom Act of 2013: Hearing on H.R. 917 Before the Subcomm. on Cts., Intellectual Property & the Internet of the H. Comm. on the Judiciary, 113th Cong. 38 (2014) at 36-37 (prepared statement of Hon. Julie A. Robinson, U.S. Dist. Judge, Dist. of Kansas, expressing concern that cameras in the courtroom may cause witnesses to exhibit "bravado and over-dramatization" or "self-consciousness and under-reaction" while testifying, which could impede accurate assessment of credibility).

Finally, Mr. and Ms. Sanchez do not address some of the practicalities of implementing their request for an audiovisual recording. If accepted, petitioners' request would increase the costs and burdens on the judiciary. Just as the Court provides a court reporter to create an audio recording (see RCFC 80.1(a)), the Court would need to provide the videographer to create an audiovisual recording. It is not readily apparent that the Court's contract for audio recording and transcription would encompass videorecording as well. If not, Court staff would

be required to locate a videographer and to confirm the videographer's background and competency. The fact that the hearing in the Sanchez case is being planned for Southern California adds an extra degree of complexity.

*   *   *

In sum, audio recordings of hearings and the creation of transcripts have been the ways trial fora have memorialized the testimony of witnesses for decades. RCFC 80.1 is consistent with this well-established practice. Although Mr. and Ms. Sanchez proposed a departure from what the rules contemplate, they have not established any special circumstance warranting deviating from how things are done. Thus, the March 19, 2025 motion for an audio-visual recording is DENIED.

**IT IS SO ORDERED.**

<u>s/Christian J. Moran</u>
Christian J. Moran
Special Master